[Civ. No. 7263.  Third Dist.  Sept. 4, 1946.]

BERNARD A. STOLTZ, Respondent, v. R. N. B. CONVERSE, Appellant.

A. Dal Thomson for Appellant.

Thomas O'Hara and Robert A. Zarick for Respondent.

ADAMS, P. J.—Plaintiff sued defendants Machado, Fernadez Trucking Co., Converse Trucking Service and R. N. B. Converse, for damages for personal injuries suffered by him in an accident which occurred on January 10, 1944, in the underpass or tunnel adjacent to the town of Davis, where after a curve to the right (when traveling toward Sacramento) the highway descends at a 5 per cent grade under the tracks of the Southern Pacific Railroad Company. The action was prosecuted against Converse only, he being an individual doing business as the Converse Trucking Service. Trial by a jury resulted in a verdict in favor of plaintiff in the sum of $3,064.58. Defendant's motion for a new trial was denied and this appeal followed.

The evidence reveals that plaintiff was an employee of Riske Truck Company, and was driving a Diesel tractor and semi-truck belonging to that concern, the over-all weight of his equipment and load being about 30 tons. He was carrying a load of rice, bound for Sacramento from Chico. Defendant Machado was driving a truck and trailer belonging to Fernandez Trucking Co., and, at the time of the accident, was proceeding ahead of plaintiff and in the same direction. Ahead of Machado was a truck and trailer belonging to Converse, same being loaded with aeroplane wings belonging to the United States Government, and operated by John Grizzle.

The Converse equipment had an over-all length of 56 feet, and, with its load, was 14 feet in height.

Plaintiff testified that as he approached the tunnel or underpass and made the turn therein to the right he observed the Converse truck sitting in the subway and the Fernandez equipment behind it, both being stationary; that he was traveling about 15 miles per hour and did not see same until he was within 35 or 40 feet of the Fernandez trailer; that he thought he could pull around same to the left but there was a car coming, so he pulled back to the right and applied his brakes, but was unable to bring his vehicle to a stop, and as a result struck the right corner of the Fernandez trailer and was thrown through his windshield. Injury sustained by him consisted mainly of a cut in the left wrist which severed some tendons and nerves and rendered the hand practically useless so that he no longer had any "grip" in same and could not hold or lift objects of any weight. He testified also that he was left handed, and there was medical testimony that the injury to the wrist was permanent in nature.

Grizzle, the driver of the Converse equipment, denied that he had stopped at the time of the collision, but stated that he had slowed down to a mile or a mile and a half per hour, and was looking up to see if his load would clear when he heard the noise of the collision; that the cab of his truck was in the tunnel, but the load had not yet reached the clearance point; that later he backed out of the tunnel as he could not have passed through without damaging his load; that he knew that the height of the underpass was 14 feet, and that his load was 14 feet high.

The first contention made on this appeal is that there was no showing of negligence on the part of defendant, and therefore insufficient evidence to justify the verdict; that defendant's equipment was loaded by the United States Government, the owner of the aeroplane parts, and that it was also shown that, though a legend posted at the tunnel stated that its height was 14 feet, 4 inches, it was in fact but 14 feet. While appellant concedes that for the purposes of this appeal we must accept as true the testimony of plaintiff that at the time of the accident appellant's driver was standing in the subway looking at the load, he argues that nevertheless there was a reasonable excuse for his stopping, as it was for the purpose of surveying the load with reference to the height of the tunnel; and that, though there was a technical viola-

tion of the statute in so stopping, it could not constitute negligence.

■ As for the argument that the equipment was not loaded by defendant, it is not the loading of a vehicle in excess of the height (13 feet, 6 inches) allowed by statute (Veh. Code, § 697 (a)) but its operation upon the highway (Veh. Code, § 691) which constitutes the violation of law; and since we must assume that defendant's equipment was stopped in the tunnel in violation of section 586(j) of the Vehicle Code, it cannot be said that the evidence is insufficient to show negligence on the part of defendant. As for appellant's statement that the legend regarding the height of the tunnel was erroneous, it is sufficient to say that defendant's driver did not testify that he relied thereon; also the evidence shows that he was familiar with the highway. As for the argument that the violation of the statute by stopping in the tunnel was not negligence under the circumstances because there was a reasonable excuse for so doing, appellant cites *Lockie* v. *Pence,* 5 Cal.App.2d 172, 173 [42 P.2d 340]; *Mora* v. *Favilla,* 186 Cal. 199, 207 [199 P. 17], and *Prescott* v. *City of Orange,* 56 Cal.App.2d 144 [132 P.2d 523]. But those cases are not applicable here. In *Lockie* v. *Pence,* the parking of the truck involved in the accident was said not to be negligence because it broke down and it was impossible to move it, thus bringing the case within the exception provided by section 136 of the Motor Vehicle Act (now Veh. Code, § 584) excepting disabled vehicles. *Mora* v. *Favilla* held no more than that a presumption of negligence from disobedience of an ordinance was not conclusive, but was subject to rebuttal ''by evidence of an overruling necessity . . . to avoid more serious danger to pedestrians passing over that portion of the street.'' At any event, whether appellant showed a reasonable excuse was, as was said in *Prescott* v. *City of Orange, supra,* a matter of fact for the jury, and not one of law for this court.

■ Appellant's next contention is that plaintiff was guilty of contributory negligence as matter of law because it is conclusive that if he had been watching the highway he would have seen the Fernandez trailer before he reached the point 35 or 40 feet to the rear of it, at which point, as he testified, he first saw it. In this connection appellant relies upon the testimony of a surveyor who, prior to the trial, made certain observations as to visibility around the curve and into the

subway, and prepared a map upon which he calculated measurements as to how far he could see from different points. On motion for a new trial defendants relied upon this testimony and made the same contention. The trial court, in its opinion rendered when denying said motion, stated: ''A map was introduced showing the view a man would have standing two feet inside the white line. While objection was made and overruled to the introduction of this testimony, the Court pointed out that it was rather a question of the weight of the evidence as it was realized that the conditions were not the same, in that the plaintiff was sitting in the driver's seat in the equipment he was driving, and necessarily he was some distance farther inside the white line. It would be mere speculation for me to attempt to state how far inside the white line plaintiff was when he was driving along. In the first place while he said probably two feet, referring to the side of his truck, the distance necessarily is merely an estimate; again, whether the cab in the truck is located some distance from the side of the truck does not appear. The photographs and the diagram both show bushes along the right side of the highway, and, if we examine the photograph 'D' it will be seen that these bushes appear to shut off the view of the roadway beyond, particularly from where the cameraman may then have been standing, whether this condition existed at the time of the accident does not appear. The two pieces of equipment, defendant Converse's and also Machado's, with the space between them, occupied some distance from the tunnel, and the rear end of the Machado equipment could not have been very far from the curve as the machine entered the highway leading to and through the tunnel. A good view of this portion of the highway will be seen by examining Exhibit 'E.' If we examine Exhibit D photo, it will be seen that the shrubbery or small trees at a point about where the roadway appears to turn to the right extend some distance over the edge of the highway, and doubtless would obstruct the view to some extent of the driver of any vehicle approaching from the west, if the same conditions as to shrubbery obtained at the time of the accident. It would not seem that defendant's showing in regard to the distance of the view of the highway was such as to make it obligatory on the jury to adopt the surveyor's estimate as final or conclusive on the question, so far as the curved portion of the roadway is concerned.''

We agree with this conclusion of the trial court and cannot say that under the evidence adduced plaintiff was guilty of contributory negligence as matter of law. Appellant asserts in his brief that plaintiff had an unobstructed view for 245½ feet, but this was flatly denied by plaintiff, and it was for the jury to determine whether plaintiff was or was not negligent under the circumstances of the case.

■ Another ground for reversal urged by appellant is that at plaintiff's request the court instructed the jury that if they rendered a verdict in favor of plaintiff, in determining the amount of damages to be awarded to him they should take into consideration, among other things, loss of earnings as general damages. Appellant also asserts that the amount awarded by the jury for general damages ($3,000.00) is excessive in that the verdict stated that it included "loss of work." It is asserted by appellant that "a loss of earnings, salary or wages is not necessarily sustained as a result of an accident; hence such items must be specially pleaded and are not recoverable unless so pleaded," citing: *Lombardi* v. *California Street Railway Co.,* 124 Cal. 311, 319 [57 P. 66]; *Shaw* v. *Southern Pacific Railroad Co.,* 157 Cal. 240, 242 [107 P. 108]; *Hoffmann* v. *Lane,* 11 Cal.App.2d 655, 659 [54 P.2d 477]; and *Senegram* v. *Groobman,* 30 Cal.App.2d 514 [86 P.2d 859]. But the cited cases do not support appellant's assertion.

In the early case of *Treadwell* v. *Whittier,* 80 Cal. 574 [22 P. 266, 13 Am.St.Rep. 175, 5 L.R.A. 498], the complaint set forth the nature of plaintiff's injuries and alleged that they would permanently impair his health, strength and activity. The court instructed the jury that in assessing damages, if any, they might take into consideration the permanent loss and damage, if any was proved, arising from disability to plaintiff resulting from his injuries, which rendered him less capable of attending to his business than he would have been otherwise. It was held that there was no error in giving the requested instruction, the court saying, page 579:

"Damages which *necessarily* result from the act complained of are denominated general damages, and may be proved under the *ad damnum* clause or general allegation of damage, while those which are the natural consequences of the act complained of, and not the necessary result of it, are termed special damages.

"The defendant must be presumed to be aware of the

damages which necessarily result from the act done, and therefore he cannot be held to be taken by surprise when proof is offered of such necessarily resulting damage. But as to the damage naturally, though not necessarily, resulting from the act done, the defendant cannot be presumed to be aware of, and therefore, in order to prevent a surprise on defendant, it must be specially set forth in the complaint, or the plaintiff will not be permitted to give evidence of it at the trial.''

Also, page 580:

"The court in this instruction only directed the jury to take into consideration, in assessing the damages, such as necessarily resulted from the injuries set forth in the complaint, if such injuries were proved by the evidence. That the injuries set forth will necessarily render a person less capable of attending to his business is clearly apparent, and no argument is needed to make it clear.''

In *Armstrong* v. *Ford,* 30 Cal.App.2d 347, 353 [86 P.2d 385], this court held that the evidence of plaintiff's earning capacity was competent under the issue tendered by the allegation in the complaint that because of the permanent character of his injuries plaintiff's earning ability would be impaired (citing *Treadwell* v. *Whittier, supra,* and other cases) ; that the issue of permanent impairment rendered the evidence of earning capacity competent; and that loss sustained on account of impaired earning capacity as a proximate result of the injury sustained may be considered under a general demand for damages. In *Lejeune* v. *General Petroleum Corp.,* 128 Cal.App. 404, 418-419 [18 P.2d 429], the court instructed the jury that in arriving at the amount of damage they might consider plaintiff's loss of wages and the impairment of his earning power, if any. There, as here, appellant contended that the pleadings made no reference to a loss of wages or earning power, and that the instruction was therefore improper. But this contention was held to be unsound. Again, in *Wilcox* v. *Sway,* 69 Cal.App.2d 560, 571 [160 P.2d 154], the court, citing and quoting from *Castino* v. *Ritzman,* 156 Cal. 587 [105 P. 739], held that the value, if any, of plaintiff's time during the period she had been or would be disabled as the direct and proximate result of her injuries was an item included in her general damages, citing *Treadwell* v. *Whittier* and *Armstrong* v. *Ford, supra,* and other cases. There the appellant relied upon the same cases that appellant relies upon in this case, but the court pointed out that they were

not pertinent since plaintiff was not seeking to recover for business expenses, loss of profits, damage to business or even the value of her services to such business, as was the situation in the cited cases. (Also see *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237, 251-252 [116 P. 513]; *Leiner* v. *Eng-Skell Co.,* 104 Cal.App. 228, 231 [285 P. 905]; *Graham* v. *Yellow Cab Co.,* 125 Cal.App. 141, 144 [13 P.2d 773]; *Dutro* v. *Castoro,* 16 Cal.App.2d 116, 117 [60 P.2d 182].)

Furthermore, testimony by plaintiff regarding the period of time that he was unable to work because of his injury and as to the amount of his earnings was received without objection on appellant's part, and appellant's counsel cross-examined on the subject; and it has been held that even in jurisdictions where loss of time or impairment of earning power must be specially pleaded, if evidence of such losses is received without objection the objection that they were not pleaded is waived. (See 15 Am.Jur. 758, and cases there cited.)

Appellant further contends that the trial court erred in instructing the jury in the language of sections 582 and 583 of the Vehicle Code because there was no evidence as to the character of the district where the accident occurred. No authorities are cited in this connection nor is it pointed out how or at all the reading of these sections was injurious to appellant. In view of article VI, section $4\frac{1}{2}$ of the Constitution, this needs no further consideration, particularly since, as pointed out by the trial court, appellant's vehicle admittedly exceeded the height of 13 feet, 6 inches, the maximum allowed by law, and its operation upon the highway violated section 697(a) of the Vehicle Code, whether the scene of the accident was or was not within a business or residential district.

Appellant finally asserts that "for all practical purposes" defendant's equipment constituted "a disabled vehicle" within the exemption created by section 584 of the Vehicle Code. No authorities are cited in support of this contention, and it is contrary to the holding of this court as expressed in *Callison* v. *Dandero,* 51 Cal.App.2d 403, 410 [124 P.2d 852]. There it was argued that appellant's truck was disabled in the sense that it was unable to go forward because the road in front of it was blocked by a slide. We there held that the word "disabled" as used in the Vehicle Code means that a vehicle is mechanically defective when it is in a condition which prevents it from being operated on its own power; or when it is difficult to do so on that account.

Also see *Dillon* v. *Sterling Rendering Works,* 106 Colo. 407 [106 P.2d 358, 361], in which it was held that a vehicle was not disabled within the meaning of a similar statute because frost had entirely covered the windshield, materially affecting visibility.

As we find no error in the record justifying reversal, the judgment is affirmed.

Peek, J., and Thompson, J., concurred.