398 P.2d 935

Robert W. FINN, Special Administrator of the Estates of Francis M. Williams and Sally Williams, husband and wife, decedents, Appellant,

v.

J. H. ROSE TRUCK LINES, a Texas corporation, Appellee.

No. 2 CA–CIV 8.

Court of Appeals of Arizona.

Feb. 9, 1965.

Rees, Estes & Browning, by Donald Estes, Tucson, and Brown, Finn & Rosenberg, by Robert W. Finn, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by Thomas Chandler, Tucson, for appellee.

MOLLOY, Judge.

This appeal arises in a civil action filed in the lower court to recover damages for a husband and wife killed on October 18, 1958 at the Cienega Wash Bridge on the Tucson-Benson Highway.

The plaintiff, as administrator of the estates of the deceaseds, Francis M. Williams and Sally Williams, brought suit against two trucking corporations, and the drivers of two tractor-trailer trucks.

At the conclusion of the plaintiff's case, the court directed a verdict in favor of all of the defendants. The plaintiff appealed only as to one of the trucking corporations, J. H. Rose Truck Lines, the appellee.

The death of the plaintiffs resulted when a passenger car in which they were the driver and a passenger, proceeding in an easterly direction towards Benson, collided almost head-on with the tractor-trailer of North American Van Lines, the defendant trucking corporation as to which no appeal was taken. The highway in question was a two way highway. The point of impact was almost in the middle of the westbound lane of traffic, the lane in which the North American Van Lines truck was traveling. The appellee Rose's truck was not involved in the impact itself, but was in the roadway in the eastbound lane some distance to the east of the point of impact.

After the accident, the same was investigated by a highway patrol officer who testified that the rear end of the appellee's truck was found by him parked 300 feet east of southeast end of the Cienega Wash Bridge, that the point of impact was approximately 64 feet east of the northeast end of the bridge, and that the southeast end of the bridge was 12 feet further east than the northeast end of the bridge, thus placing the rear end of the Rose truck, as parked, approximately 250 feet east of the point of impact.

The highway patrolman found the deceaseds' badly mangled 1949 Plymouth car back in the eastbound lane of traffic, some distance west of the impact, where it had been shoved by the force of the impact. The cab of the North American Van Lines truck was at the bottom of the wash after going through the bridge guard rail, with the trailer portion blocking the east lane on the bridge.

There was a third car involved in the accident, which made contact with the Plymouth car driven by the deceaseds after their car came to rest in the eastbound lane. It was conceded by all that Mr. and Mrs. Williams were killed by the impact with the North American Van Lines truck.

On the day in question, the Rose truck was carrying a load of airplane parts, with the height of the load being 14 feet 9½ inches. The reason for it being parked or standing in the roadway at the time of the accident was that there was approximately 350 feet ahead a railway overpass with a posted height clearance of 13 feet 11 inches. At the time of the collision, one of the appellee's drivers had walked up to the underpass to personally check the possibility of a truck proceeding under the

overpass, and the other driver was in the cab.

The width of the highway in question was 33 feet 10 inches, with 14 feet being in the westbound lane and 19 feet 10 inches in the eastbound lane. Both sides of the highway were bounded by curbs and there was a white line separating the lanes of traffic. There were skid marks 76 feet in length laid down by the deceaseds' vehicle prior to impact, which began on the Cienega Wash Bridge in approximately the center of the eastbound lane, and which angled toward the center of the highway, fading out at approximately the center of the highway a short distance back from the point of impact. The highway patrolman estimated the speed of the deceaseds' car at 69 miles per hour prior to the application of brakes and the speed of the North American Van truck, which laid down no skid marks, at 45 miles per hour prior to impact. There were no flares or warning flags placed by the appellee's truck drivers.

The accident happened at approximately 7:15 in the morning, the day was clear, the road was straight, and the visibility unobstructed for between one half to three quarter's of a mile when approaching from the direction the deceaseds' car was approaching.

There was still a fourth car involved in the accident. The driver of the North American Van truck, Brand, testified that a small compact car going in an easterly direction was in a position as if attempting to pass the appellee's truck, but did not pass, just prior to the collision. The identity of the driver of this compact car is unknown.

The appellant contends that the court erred in taking the case from the jury for the reason that there was evidence from which reasonable men could have concluded that the appellee was at fault in stopping its truck in the main traveled portion of the highway without adequate warnings and that certain portions of the deposition of the defendant, James Brand, the driver of the North American Van truck, were erroneously excluded from evidence.

Portions of the deposition of Brand were offered in evidence by the plaintiff even though Brand was present personally at the trial. Some of this offer was received for all purposes, some was admitted only against defendants Brand and North American Van Lines, and a portion was excluded entirely upon the objection of appellee's counsel.

The portions so excluded and as to which error is predicated are statements by Brand: that when he first saw appellee's truck, he "thought" it was going "awfully slow", and that "something was wrong"; that as he approached he "sensed that there was a possibility for some trouble because the traffic was going so slow"; that it wasn't until he got "bumper to bumper" with appellee's truck that he "saw it was stopped"; that "the road was completely blocked"; that the "small car" was "pulled up there like he was going to pass but he didn't" and "like he was in a position to pull out but he didn't"; and that he (Brand) didn't know if the small car was "going to try to pass because the truck was congesting traffic and he knew he couldn't get around".

Without the foregoing testimony, there was no evidence but what the appellee's truck was parked next to the curb on the right hand side of the road immediately prior to the accident.

Without such evidence the ruling of the trial court in directing a verdict in favor of the appellee appears to be correct. In a negligence action, it is incumbent upon the plaintiff to present evidence from which it may be reasonably inferred that negligent conduct on the part of the defendant was a proximate cause of the plaintiff's injuries. Rosendahl v. Tucson Medical Center, 93 Ariz. 368, 380 P.2d 1020.

Plaintiff contends that there was evidence that the Rose truck was in violation of A.R.S. § 28–1004, which provides for a load limit of 13 feet 6 inches. That

this load limit was exceeded is undisputed. However, A.R.S. § 28–1011 gives to the Arizona Highway Commission the authority, in its discretion, to issue a special permit authorizing the operation of a vehicle on the highways with loads exceeding the maximum height specified. In this case, the highway patrol officer testified that he had examined the written permit issued to the appellee Rose Truck Lines for this load. Under these circumstances, the court can see no violation of the height-limit statute.

Appellant has also contended that the Rose truck was in violation of two other statutes governing the conduct of motor vehicles upon the public highway. These are A.R.S. §§ 28–871 and 28–961, which read insofar as they are pertinent to this action:

"Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave the vehicle off that part of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of the stopped vehicles shall be available from a distance of two hundred feet in each direction upon the highway."
(A.R.S. § 28–871A)

"When any vehicle of a type referred to in this section (any motor truck, passenger bus, truck tractor, trailer, semi-trailer, or pole trailer) is disabled upon the traveled portion of a highway or the shoulder thereof outside of any municipality at any time when the display of fusees, flares or electric lanterns is not required, the driver of the vehicle shall display two red flags upon the roadway in the lane of traffic occupied by the disabled vehicle, one at a distance of approximately one hundred feet in advance of the vehicle, and one at a distance of approximately one hundred feet to the rear."
(A.R.S. § 28–961D)

The appellant contends that these two statutes should be construed *in pari materia*, and that, when so construed, these statutes require any motor truck, et cetera, as described in A.R.S. § 28–961 which is stopped or parked, et cetera, as described in A.R.S. § 28–871 to have warning devices placed as required by A.R.S. § 28–961.

Such a construction would not only be strained but would require dangerous and almost impossible conduct. There is no requirement that a motor truck on the highway have two drivers. If for any reason, emergency or otherwise, a motor truck is temporarily stopped in the highway it would certainly be dangerous to require that driver to leave his vehicle and to run forward and back of his truck to place flags, which presumably he would have to leave in the roadway when he drove away as soon as the emergency or other reason for the temporary stop was abated.

In the instant case, the Rose truck was stopped for an indefinite period of time, with the capacity of proceeding on at any time that a solution to its immediate problem were achieved, either by ascertaining that the underpass was high enough to accommodate the truck or that there was some way to go around or turn back.

The two statutes which are relied upon are clear and unambiguous and there is no need to resort to secondary rules of construction. State ex rel. Morrison v. Anway, 87 Ariz. 206, 209, 349 P.2d 774. The two statutes are dealing with two different subjects and/or categories. The one pertains to *all* vehicles stopped on the highway and the other pertains to particular types of motor vehicles, and then only when "disabled". There is no need to read language of one into the other.

The court can see no possible application of A.R.S. § 28–961 to the facts of this case. The Rose truck was simply not

"disabled". Stoltz v. Converse, 75 Cal. App.2d 909, 172 P.2d 78 (1946).

In the instant case, the evidence shows that there was curbing on both sides of the subject highway, the curbing being of a type not sloped for the passage of vehicles. There is no showing that it would be practicable for a motor truck, under the circumstances existing immediately prior to the accident, to park to the south of this curbing. If the Rose truck were parked as close as practicable to the right curb, the measurements of the highway demonstrate that there was ample room for other vehicles to pass without even crossing the center line.

■ The court construes A.R.S. § 28–871A to require a motor vehicle to park as far as practicable off the paved or main traveled part of the highway. Morris v. Fitzwater, 187 Or. 191, 210 P.2d 104 (1949). The question remains as to whether or not there was any evidence that the Rose truck violated this requirement.

■ If there is any evidence of negligent conduct which reasonable men might infer was one of the proximate causes of this accident, the case should have been submitted to the jury for its decision. Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803.

As previously indicated, unless the opinion evidence of Brand raises such an inference, this particular record is devoid of any evidence which would tend to establish that the Rose truck was parked any distance away from the curb.

The testimony offered was excluded by the court on the basis of appellee's objections that the answers given by Brand were conclusions and opinions of the witness and non-responsive to questions asked.

Appellant contends that though Brand was expressing opinions, the testimony excluded was in the range of what is permissible for a lay witness in testifying as to matters which are so complex as to render it difficult to testify other than by expressing opinions. The appellant further contends that inasmuch as appellee's counsel did not object to the form of the answer given on the deposition, the same cannot be raised at the time of trial because Rule 32 (c), Rules of Civil Procedure, 16 A.R.S., provides, in substance, that objections to the competency, revelancy or materiality of testimony and errors in the form of questions and answers at depositions are waived if the ground of the objection is one that "might have been obviated or removed" if presented at the time of the taking of the deposition.

■ It seems very apparent to the court that the lack of responsiveness of the answers is clearly waived under the foregoing rule, and that the exclusion of the testimony cannot be upheld on this ground.

■ Appellant's counsel has cited no authority holding that opinion evidence, not ordinarily admissible under pertinent rules of evidence, is rendered admissible by reason of the fact that there is no objection made at the time of the taking of a deposition. Objection to a very blatant expression of opinion by a deposing witness, when the expression was less critical to the outcome of a case, has been held not to be waived by failure to make the objection at the time of the taking of the deposition. Rivera v. Hancock, 79 Ariz. 199, 286 P.2d 199.

■ The court recognizes that opinion evidence is not objectionable at all if it pertains to complex facts which are difficult to describe in any other way than by giving conclusions. Udall, Arizona Law of Evidence, § 22, p. 38. Some of the excluded portions of the testimony of Brand may fall within this rule. The testimony that Brand, when he first saw the Rose truck, thought it was traveling "awfully slow", that as Brand got "bumper to bumper" with appellee's truck he saw "it was stopped", and even the testimony that the small car was "pulled up there like he was going to pass but he didn't" might be so admitted.

However, none of these particular portions are critical to the outcome of this

case. The fact that another driver, approaching from a different direction, could not tell when he first saw the Rose truck whether it was moving slowly or stopped has nothing to do with the issues of this case.

The facts that there was a small car in a position as if to pass and that the Rose truck was stopped are in evidence from other portions of the Brand deposition, and hence it is unimportant that they were excluded here.

A statement that Brand "sensed there was a possibility of trouble", et cetera, has no probative value insofar as the appellee's liability is concerned.

 The significant testimony omitted was the statement of Brand that the appellee's truck was "congesting" traffic and that the "road was completely blocked". These, of course, are opinions of Brand's, the meaning of which is less than clear. The expression "congesting traffic" has no clear meaning, under the circumstances of this case. This is also true of the expression of the road being "completely blocked", for here we have the uncertainty of not knowing what part each of the two vehicles concerned (the small car and the Rose truck) were playing in this situation as expressed in the opinion of the witnesses.

The admitting of opinion evidence is not a black or white proposition, but rather one of shadings of grays. Expression of any fact, even stating the time of day, is in a sense an expression of an opinion. The authorities agree that the trial judge has considerable discretion in determining where to draw the line. Higgins v. Arizona Savings and Loan Association, 90 Ariz. 55, 365 P.2d 476; 32 C.J.S. Evidence § 449, p. 85.

Here, the opinions expressed are close to an ultimate fact at issue in the case. This is a factor tending toward exclusion.

Alires v. Southern Pacific Company, 93 Ariz. 97, 108, 378 P.2d 913. Moreover, the conclusion expressed is one that could easily be expressed by describing facts, i. e., How far was the truck from the curb?; How close was the truck to the center line?; et cetera.

Unless the defendant's counsel waived the objection by not making it at the time of the deposition, as provided in Rule 32, Rules of Civil Procedure, it seems clear that under these principles, the trial court did not err in excluding the opinion evidence submitted.

In reaching its conclusion that the objection to this testimony was not waived, the court has in mind that the witness Brand was personally present at the trial and could have been called by the plaintiff as a witness.

This is a deposition offered by an "adverse party" in pursuance of Rule 26(d) 2, but as to the appellee, the deponent Brand is an ordinary witness. The statements excluded are thus in no sense admissions against interest of a party.

 Rule 32 appears to be designed to avoid an unfair laying in wait by which another party is prejudiced. Here, because of the ready availability of the deponent, and because the "adverse party" is not offering the deposition against the deponent party or his employer, but rather against another party, the reason for the waiver provision in Rule 32 is not present. Hence, the ruling of the trial court is considered to be within his discretion and is upheld.

This court finding no evidence in the record which would justify a jury in holding that the defendant Rose was negligent, and finding no error in the exclusion of evidence as predicated in the assignments of error, it is ordered that judgment of the lower court is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concurring.