714 P.2d 1299

**Don HARRINGTON, Appellant,**

**v.**

**Priscilla KNUCKEY, Treasurer of Gila County, Raymond E. Ward, Sean Delaney, Charles Delaney, War-Del Properties, Inc., and Charles Hallett, Trustee of the Great Southwest Land & Cattle Corporation, Appellees.**

**No. 2 CA–CIV 5362.**

Court of Appeals of Arizona, Division 2, Department A.

Sept. 30, 1985.

Review Denied Feb. 25, 1986.

Paytas, Lutich, Bernstein, Shannon & Fleming by A. Michael Bernstein and Thomas W. McLellan, Phoenix, for appellant.

Joe Albo, Jr., Gila County Atty., Globe, for appellee Knuckey.

Gorey, Delaney & Melkonoff, P.C. by Edgar M. Delaney, Phoenix, for appellee Ward.

## OPINION

FERNANDEZ, Judge.

The only issue in this quiet title action is the validity of a treasurer's tax deed issued by the Gila County treasurer four days after an automatic stay order was lifted in a bankruptcy proceeding. The trial court, in granting appellee Ward's motion for summary judgment, determined that the treasurer had no jurisdiction to issue the deed and held it was null and void. We disagree and reverse.

On March 22, 1972, a certificate of purchase to Lot 105, Beaver Valley Estates # 3, Gila County, was issued to the state as the result of a sale for delinquent taxes. On June 7, 1972, an order was issued approving the Chapter X bankruptcy petition of the Great Southwest Land & Cattle Corporation, presumably the owner of record of the lot in question.[1] The order also included language staying all proceedings against the debtor pursuant to what is now the automatic stay provision of 11 U.S.C. § 362(a) (1985 Supp.). On February 8, 1973, the certificate of purchase on the lot was assigned to appellant Harrington after he paid all delinquent taxes owing on the property. He has paid all subsequent taxes on the property as well.

Sometime during the bankruptcy proceeding Jack Sloan, who is not a party to this action, sued the trustee in bankruptcy. The exact nature of that suit is not clear.

Apparently Sloan sued for reclamation of a number of properties. The basis of Sloan's claim to the property in question has not been provided to us. On April 9, 1981, Sloan and the trustee entered into a stipulation for entry of judgment. The stipulation provided that the bankruptcy court "may find that the State [sic; apparently the parties meant "estate"] has no interest in and to the following properties...." Lot 105 was one of the listed properties. The stipulation also provided that Sloan would be allowed reclamation on the properties and that the trustee would convey the lots to him by quit claim deed.

Judgment pursuant to the stipulation was entered the same day. The bankruptcy court order stated that the bankruptcy estate had no interest in Lot 105 (and other properties) and provided, "In order to effectuate the reclamation, the trustee *may* deed to plaintiff, JACK SLOAN, or his nominee, by Quit Claim Deed, the aforesaid lots." (Emphasis added.) The judgment also included the following language: "The stay order under Section 362(a) of the Bankruptcy Code previously in effect as to these properties is hereby declared to have been inapplicable to the properties involved and is lifted and removed to the extent it was applicable."

An additional agreement was entered into on April 9, 1981, between Sloan, appellee Ward and others who are not parties to this lawsuit which purported to settle claims to a number of parcels of Gila County property. The agreement notes that Sloan had filed an adversary proceeding in the bankruptcy case seeking reclamation of the properties "with the exception of ... Lot 105, Unit 3." It stated Sloan held tax certificates on all the properties except for Lot 105 and one other and provided that he would apply for treasurer's tax deeds on them as soon as the bankruptcy stay was lifted. He then agreed to designate Wardel Properties as his nominee to receive a quit claim deed from the trustee for certain of the properties, including Lot 105.

---

1. We say "presumably" because only a minimal amount of the supporting documents in this case was provided to the trial court by the parties.

On April 13, 1981, after receiving a certified copy of the bankruptcy judgment which included the order lifting the stay, appellee Knuckey, the treasurer of Gila County, issued a treasurer's tax deed to appellant Harrington for Lot 105. She also issued 20 treasurer's tax deeds on the same day to Sloan.[2] On April 14 the trustee executed a quit claim deed to appellee Ward for 13 lots listed in the agreement, including Lot 105.

In October 1982 Ward filed suit to quiet title to Lot 105, contending that the treasurer had no jurisdiction to assign the certificate of purchase to Harrington or to issue the treasurer's deed to him. Harrington counterclaimed, asserting his right to the property. Both moved for summary judgment, and the trial court found that the bankruptcy judgment required the trustee to issue a quit claim deed in order for the property to be cleared from the bankruptcy estate. The court stated that Ward "must be given a reasonable, brief period of time in which to redeem the property."

Harrington has appealed from that judgment, disputing the trial court's finding that the bankruptcy judgment ordered the trustee to convey the property to Ward and contending that the treasurer had jurisdiction to issue the tax deed as soon as the bankruptcy stay was lifted.

■ We begin with the fact that the redemption right held by the owner of record of property that has been sold for delinquent taxes is property of the bankruptcy estate under the Bankruptcy Code. *In re Bialac,* 712 F.2d 426 (9th Cir.1983). During the period of redemption, the owner has the right to possession of the property and to the use and fruits thereof. *Gunther & Shirley Co. v. Presbytery of Los Angeles,* 85 Ariz. 56, 331 P.2d 257 (1958). During that period the purchaser of the tax sale certificate has a lien only, the certificate serving as evidence which entitles the holder to a deed when certain conditions are fulfilled. *Gunther & Shirley Co.,* supra; *Conway v. Mosher,* 55 Ariz. 307, 101 P.2d 209 (1940).

The taxes owed on the property became delinquent on the first Monday of November and May, depending on which installment was unpaid under the language of the statute applicable at the time. A.R.S. § 42–381. The fact that the certificate of purchase to the state was issued in March 1972 indicates that the taxes had been unpaid for some time and that the property had been through a public sale for which notice had been given. See former A.R.S. §§ 42–385 through 42–390 (the applicable statutes since the tax sale was in 1972). The requirements for the sale were all met prior to the filing of the petition for bankruptcy. The only event in these proceedings that occurred during the period of the stay was the assignment of the certificate to Harrington. That assignment was merely a transfer of the evidence of the lien that already existed on the property and was not in violation of the automatic stay provisions of 11 U.S.C. § 362(a).

■ The stay order that was entered in the bankruptcy proceeding on June 7, 1972, prohibited, inter alia,

"executing or issuing ... out of any Court, of any Writ, Process, Summons, Attachment, Subpoena, Replevin, Execution or other Process for the purpose of impounding or taking possession of or interfering with or enforcing a Lien upon any property owned by or in the possession of the said Debtor ... and from continuing any out-of-court proceeding for the forfeiture or foreclosure of the interests of the Debtor...."

Section 362(a)(5) more succinctly prohibits "any act to create, perfect, or enforce against property of the debtor any lien...." The mere assignment of ownership of an existing lien is not a violation of either the language of the specific stay order of the bankruptcy court nor of

---

**2.** A number of the deeds showed both Sloan and Gerald Ryden as grantees. Ryden is not a party to this lawsuit.

§ 362(a), since the assignment neither created the lien nor served in any way to enforce it. The treasurer thus had jurisdiction to assign the certificate of purchase to Harrington in February 1973.

We next examine the documents relating to the bankruptcy judgment of April 9, 1981, to determine if the treasurer had jurisdiction to issue the tax deed on April 13. The agreement between Sloan, Ward and others specifically states that Sloan did *not* hold a tax certificate on Lot 105, and nothing else in the agreement establishes any ownership right in the property in Sloan. Additionally, neither Harrington nor the Gila County treasurer was a party to that agreement, so neither was bound by it in any way.

The stipulation for entry of judgment was between Sloan and the bankruptcy trustee only. Both it and the judgment itself state that the bankruptcy estate had no interest in Lot 105 and other properties. Considering that order, there is no explanation as to why the next paragraph provides that the trustee may quitclaim the lots to Sloan or his nominee.[3] In any event, the judgment states only that the trustee *may* deed the lots by quit claim deed; it does not *require* the trustee to deed them. Furthermore, the language of the order lifting the automatic stay is in the present tense. It provides that the lifting of the stay is to be effective immediately; nothing indicates that it is to take effect only after the trustee deeds the lots. In fact, the final paragraph states that the judgment is to be entered forthwith.

■■■ The issuance of a treasurer's tax deed is mandatory so long as all statutory requirements have been met and no redemption has occurred. *Pioneer National Trust Co. v. Kirk*, 121 Ariz. 508, 591 P.2d 996 (App.1979); *Shulansky v. Michaels*, 14 Ariz.App. 402, 484 P.2d 14 (1971). There is no contention that the statutory requirements were not met prior to the issuance of the deed, and the treasurer's affidavit filed in connection with the summary judgment motions stated she did not issue the deed until she received a certified copy of the judgment in which the stay order was lifted. Once the stay was lifted, she had jurisdiction to issue the deed.[4]

We note also that there is no statutory authority for the trial court's order for a "reasonable, brief period" for redemption. Former A.R.S. § 42–421 provided that the property could be redeemed "at any time before the delivery of a treasurer's deed to the purchaser." Since there was no redemption prior to the issuance of the deed, the court had no authority to extend the redemption period for an unspecified amount of time.

Having determined that the Gila County treasurer had jurisdiction to issue the tax deed to Harrington on April 13, 1981, we reverse the entry of summary judgment in favor of appellee Ward and remand with instructions to enter summary judgment in favor of appellant Harrington. Appellant is awarded attorneys' fees on appeal pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S., and A.R.S. § 12–1103(B).

BIRDSALL, P.J., and HOWARD, J., concur.

■■■■■■■

---

3. We note that the agreement provided that Wardel Properties was to be Sloan's nominee for the trustee's quit claim deed, but the quit claim deed itself shows Raymond E. Ward as the grantee. There is no explanation for the change nor any mention of a relationship between Ward and Wardel Properties.

4. As noted in our summary of the facts, the treasurer also issued 20 tax deeds to Sloan on April 13, 1981, all involving lots that were listed in the agreement, stipulation for entry of judgment and judgment. Nine of the lots were also listed in the quit claim deed the trustee gave to Ward on April 14. There is apparently no contention those deeds are void. We see no distinction whatsoever between those deeds and the deed in question here.