968 P.2d 103

**MAGELLAN SOUTH MOUNTAIN LIMIT-
ED PARTNERSHIP, a partnership;
American Newland Associates, Plain-
tiffs–Appellants,**

v.

**MARICOPA COUNTY, a political subdivi-
sion of the State of Arizona; Arizona
Department of Revenue, an agency of
the State of Arizona, Defendants–Appel-
lees.**

No. 1 CA–CV 98–0025.

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 19, 1998.

Roelke & Wymore by Donald P. Roelke, Phoenix, Attorneys for Plaintiffs–Appellants.

Richard M. Romley, Maricopa County Attorney by Sandor O. Shuch, Deputy County Attorney, Phoenix, for Defendant–Appellee Maricopa County.

Grant Woods, Attorney General by Linda D. Bach, Assistant Attorney General, Phoenix, for Defendant–Appellee State of Arizona.

## OPINION

GERBER, Judge.

¶ 1 Magellan South Mountain Limited Partnership and American Newland Associates ("taxpayers") appeal from summary judgment. They contend that their properties, on which improvements were being constructed during 1996, should have been valued as of January 1, 1996, rather than

September 30, 1996. The appeal raises the following issues:

1. Whether the trial court erred in denying the taxpayers' request to postpone ruling on appellees' motion for partial summary judgment because appellees' failure to provide the taxpayers with disclosure statements or relevant evidence in their possession made the motion premature;

2. Whether the appellees acted unlawfully by including the cost of improvements constructed after January 1, 1996, within the valuations of the taxpayers' parcels;

3. Whether Arizona Revised Statutes Annotated (A.R.S.) section 42–221.01(A) (Supp.1997), as applied here, violates the taxpayers' right to equal protection of law; and

4. Whether A.R.S. section 42–221.01(A) (Supp.1997), as applied, violates the Uniformity Clause of the Arizona Constitution, Ariz. Const. Art. 9, § 2(1).

### FACTS AND PROCEDURE

¶ 2 In the beginning of 1995, the taxpayers owned two vacant lots in Maricopa County. During that year, they began building apartments on the lots. The apartments were partially constructed as of January 1, 1996 and finished by December 2, 1996.

¶ 3 On January 1, 1996, the valuation date for tax year 1997,[1] the Maricopa County Assessor valued the properties at $1,167,555 because he was unaware of the added value from the construction in progress. The full cash value of the properties on January 1, 1996 was in fact $5,591,595. After accounting for further construction since January 1, 1996, the assessor re-valued the properties at $15,093,540 and sent the taxpayers notice of the increased valuation before September 30, 1996.

¶ 4 In response the taxpayer brought this action against the county and the Arizona Department of Revenue ("DOR"), alleging that the re-valuation was illegal, discriminatory, and excessive. Maricopa County moved for partial summary judgment on its own behalf and that of DOR ("appellees" for county and DOR). In response, the taxpay-

---

1. See generally 1994 Ariz. Sess. Laws Ch. 323, as    amended by 1995 Ariz. Sess. Laws Ch. 249.

ers contended that genuine issues of material fact precluded summary judgment and thus that appellees were not entitled to judgment as a matter of law. They also contended the motion was premature because appellees had not filed answers or made disclosure, nor had the parties completed discovery. The taxpayers filed no affidavit pursuant to Rule 56(f), Arizona Rules of Civil Procedure (Ariz. R. Civ. P.).

¶ 5 After the motion had been fully briefed, but before it was argued and submitted to the trial court, the parties stipulated to postpone the initial disclosures required by Rule 26.1, Ariz. R. Civ. P., pending settlement discussions.[2] The trial court granted summary judgment for the appellees. It reasoned:

> There are two issues here: (1) does A.R.S. § 42–221.01 allow the Assessor to do what he did, and (2) did the Assessor discriminate. Part of Magellan's response to the motion is that it needs to do further discovery, but all it points to is discovery to find out whether the Assessor treated similar properties differently. At oral argument on the motion Magellan's counsel admitted that he had nothing to go on but suspicion that other properties were treated differently. Other than his statement, there is nothing to indicate discrimination. I don't believe that is enough to thwart ruling on a motion by the county. I grant the county's motion on the discrimination part of Magellan's Count 1.
>
> And I also grant it on the illegality part of Count 1. In essence Magellan argues that [A.R.S. § 42–]221.01 is unconstitutional, but I do not believe it is. I believe the September increased assessment was legal.

¶ 6 The parties later submitted a stipulated form of judgment that recited their agreement that the assessor's full cash value figure of $15,093,540 correctly reflected the value of the land and construction as of September 30, 1996. Judgment was entered.

The taxpayers timely appealed. We have appellate jurisdiction under A.R.S. section 12–2101(B)(1994).

### ANALYSIS

### FAILURE TO POSTPONE RULING ON MOTION FOR SUMMARY JUDGMENT

¶ 7 Even if, for purposes of argument, we assume taxpayers correctly assert that *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) contemplates a reasonable opportunity to complete disclosure before a motion for summary judgment should be resolved, that assumption does not support their ultimate position. First, the rules do not flatly forbid filing a summary judgment motion before an answer has been filed. See A.R.S. Ariz. R. Civ. P. Rule 56(b)(Supp.1997)(a party against whom a claim is asserted may move for summary judgment "at any time"). Second, in the three and one-half months that passed after the filing of their complaint, the taxpayers neither insisted that the appellees file an answer, nor initiated an exchange of disclosure, nor initiated discovery on their own. The taxpayer's dilatory pursuit of discovery presents a more fundamental reason for questioning their argument that the trial court abused its discretion when it declined to delay consideration of the partial summary judgment motion.

¶ 8 Additionally, the Rules of Civil Procedure offered the taxpayers another opportunity to gain more time. Rule 56(f) (Supp. 1997) provides:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to

---

2. The stipulation extended the disclosure deadline to no later than 180 days after the filing of the complaint, or if trial were to be set less than 210 days after the filing of the complaint, no later than thirty days before trial or ten days following the trial-setting order, whichever was

later. The stipulation stated that it was "entered into by the parties to facilitate the parties' settlement negotiations and eliminate the additional expense which would otherwise result because of the unique nature of ad valorem property tax cases."

be taken or discovery to be had or may make such other order as is just.

This court stated in *Lewis v. Oliver*, 178 Ariz. 330, 338, 873 P.2d 668, 676 (App.1993):

> To succeed under Rule 56(f), the moving party must present an affidavit informing the court of: (1) the particular evidence beyond the party's control; (2) the location of the evidence; (3) what the party believes the evidence will reveal; (4) the methods to be used to obtain it; and (5) an estimate of the amount of time the additional discovery will require.

¶ 9 While the appellees filed affidavits supporting their motion for summary judgment, the taxpayers filed no Rule 56(f) affidavit. Instead, they argued that the appellees failed to file an answer and that the summary judgment motion was premature.

■ ¶ 10 Their response was insufficient to support their request for a delay in the trial court's ruling. First, it was unsworn. *See Deutsche Credit Corp. v. Case Power & Equipment Co.*, 179 Ariz. 155, 161, 876 P.2d 1190, 1196 (App.1994). Second, a party seeking to delay a trial court's summary judgment ruling must furnish that court with specific rather than general reasons supporting delay. *Boatman v. Samaritan Health Services, Inc.*, 168 Ariz. 207, 212, 812 P.2d 1025, 1030 (App.1990)(quoting *Bobo v. John Lattimore, Contractor*, 12 Ariz.App. 137, 141, 468 P.2d 404, 408 (1970)). The taxpayers' unsworn response provided only a vague summary of the evidence they wished to obtain, not specific facts showing a genuine issue for trial. There was no mention of discovery methods they intended to use or estimated time needed for discovery. Because the taxpayers filed no affidavit, and thereby made no adequate effort to take advantage of the opportunity available under Rule 56(f), we cannot say the trial court abused its discretion in considering the motion filed by the appellees.

## PROPRIETY OF VALUATION DATE OTHER THAN JANUARY 1

■ ¶ 11 The taxpayers contend valuing their properties as of September 30, 1996,

was illegal because "events and facts coming into existence after January 1 cannot be used in determining the full cash value of property." They rely on both Arizona and non-Arizona decisions. *E.g., Carondelet Bldg. Co., Inc. v. Fontenot*, 111 F.2d 267 (5th Cir. 1940); *SMP II Ltd. Partnership v. Arizona Dep't of Revenue*, 188 Ariz. 320, 935 P.2d 898 (App.1996).

¶ 12 This caselaw is inapposite. The cited decisions address statutory provisions that require taxing officials to value property for ad valorem taxation purposes by January 1. The various courts appropriately held that evidence or information that arose after January 1 could not be considered without violating the respective statute.

¶ 13 Here the statutory scheme is not restricted to valuation only as of January 1. Arizona's current statutes provide that all property is initially to be valued as of January 1 of the valuation year.[3] A.R.S. § 42–221(B) (Supp.1996–97). However, it may be re-valued on or before September 30 of the valuation year to take account of "new construction, additions to, or deletions from assessment parcels and changes in property use that occur after January 1 of the valuation year[.]" A.R.S. § 42–221.01(A) (Supp. 1996–97)(current version see Supp.1997). The legislature's adoption of A.R.S. section 42–221.01 eliminates the legal foundation of the cases on which the taxpayers rely.

## THE EQUAL PROTECTION CLAUSE, U.S. CONST. AMEND. XIV, AND THE UNIFORMITY CLAUSE, ARIZ. CONST. ART. 9, § 2(1)

¶ 14 The taxpayers contend that the appellee's interpretation of A.R.S. section 42–221.01(A) violates the Equal Protection Clauses of the United States and Arizona Constitutions and the Uniformity Clause of the Arizona Constitution. They suggest that section 42–221.01(A) should apply only to changes that occur after September 30 of the preceding year and before January 1 of the valuation year.

---

**3.** The "valuation year" is the calendar year that precedes the year in which the taxes are levied.

A.R.S. § 42–201(15) (Supp.1997).

¶ 15 They reason that ad valorem property tax valuations and valuation changes occur due to "value-adding changes" or "value-enhancing factors." As examples of these factors, they list new construction, refurbishment, new improvements on or pertaining to surrounding properties, rapid growth in the general economy, the property's increased income-generating ability due to market influences, and changes in parcel configuration. They charge that A.R.S. section 42–221.01(A) postpones the assessment date only for a select few of the numerous value-adding changes that may occur between January 1 and September 30.

¶ 16 Accordingly, the taxpayers maintain that section 42–221.01(A) violates the Equal Protection Clauses of the United States and Arizona Constitutions. They explain:

... New construction that occurs after the assessment date is not part of the valuation characteristics of the property that existed as of the assessment date. It is only one of the many value-enhancing factors that may cause a property's value to increase after the assessment date and before the next annual assessment date. .... Since property values increase because of many factors, there is no rational basis for the legislature to arbitrarily choose only a few of such factors as the basis for increasing a property's value.

¶ 17 The taxpayers also argue that section 42–221.01(A) violates the Uniformity Clause of the Arizona Constitution:

... [C]lassifications for taxation purposes must be based on the nature of property or on some other real difference in its use, utility, or productivity.

Here all rental residential properties are in the same class, class six property. A.R.S. § 42–162(A)(6). They have the same use, utility and productivity. However, the legislature has attempted to treat property within this class differently. All property is to be assessed as of January 1 of the valuation year. The minority of properties that have new construction or a change in parcel configuration between January 1 and September 30 of the valuation year are reassessed at a date after January 1 and on or before September 30,

to increase their valuations based upon the new construction during the period or upon the change in parcel configuration. These new assessments are increased assessments that result in unequal and higher ad valorem taxes on the properties as compared to their January 1 assessments. Therefore, the uniformity clause of the Arizona constitution is violated.

¶ 18 The taxpayers' Equal Protection and Uniformity Clause arguments are mistaken because their core characterization of re-valuations under A.R.S. section 42–221.01(A) is fallacious. It is certainly true that new improvements on adjacent properties, non-structural refurbishment, repairs, rezonings, and market influences can reasonably be called "value-adding changes" or "value-enhancing factors." The taxpayers err, however, by placing new construction and parcel reconfiguration in that same category.

¶ 19 Factors like new improvements on surrounding properties and non-structural refurbishment only minimally change the physical character and composition of a parcel. When factors of that kind occur between January 1 and September 30 of the valuation year, the valuation that changes is that of the same property that was initially valued as of January 1.

¶ 20 Parcel reconfiguration or new construction on the assessed property do not represent new values for existing property due to superficial face-lifting work or extrinsic factors. New construction increases value by appending entirely new, previously untaxed real property to the old tax parcel. Parcel reconfiguration changes the dimensions of the parcel itself resulting in a different parcel that includes portions of property subtracted from other parcels. In either category, no true valuation change occurs. The newly-valued property is now either greater or lesser than the property that existed before.

¶ 21 To establish an equal protection violation, the taxpayers must demonstrate beyond a reasonable doubt that the different treatment A.R.S. section 42–221.01(A) accords to valuation caused by new construc-

tion and parcel reconfiguration is not rationally related to furthering a legitimate state interest. *See General Motors Corp. v. Arizona Dep't of Revenue,* 189 Ariz. 86, 92, 938 P.2d 481, 487 (App.1996); [4] *Chevron Chem. Co. v. Superior Court,* 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982)(court must find, beyond a reasonable doubt, conflict of statute with constitution).

¶ 22   The state has a legitimate financial interest in listing and taxing newly constructed property as quickly as practicable.   A.R.S. section 42–221.01(A) furthers this interest by giving the counties an additional nine months to add such property to the tax rolls.   The state has a similar legitimate interest in ensuring that its taxing subdivisions issue tax bills that are accurate. Giving the counties an additional nine months to discover recent parcel reconfigurations and to adjust the tax rolls to describe current configurations, ownership, and amounts owed, furthers this goal.

¶ 23   To establish a violation of the Uniformity Clause, the taxpayers must demonstrate two things beyond a reasonable doubt. *See Chevron Chemical Co. v. Superior Court,* at 438, 641 P.2d at 1282.   First they must prove that A.R.S. section 42–221.01(A) creates two disparately treated classes of property in existence on the general valuation date of January 1.   One class encompasses properties whose valuations change after January 1 due to new construction or parcel reconfiguration.   The other class includes properties whose valuations change in the same period due to all other causes.   Secondly, the taxpayers must prove that these classes are not rationally distinguishable from one another based on any legitimate differences in their physical or legal characteristics, the industries in which they are deployed, or their use, purpose, or productivity. *See generally In re America West Airlines, Inc.,* 179 Ariz. 528, 530–32, 533 n. 4, 880 P.2d 1074, 1076–78, 1079 n. 4 (1994); *Cutter Aviation, Inc. v. Arizona Dep't of Revenue,* 191 Ariz. 485, 958 P.2d 1, 243 Ariz. Adv. Rep. 53, 59 (App.1997).

¶ 24   The taxpayers fail to establish either proposition.   Changes in valuation that arise from new construction and parcel reconfiguration are qualitatively different from changes in valuation that flow from other factors.   Valuations that result from new construction or parcel reconfiguration are not re-valuations of previously valued property.   Instead, they represent either first-time taxation of new or different property or removal of property previously taxed under an existing tax parcel number.   Contrary to the taxpayers' assumption, A.R.S. section 42–221.01(A) does not operate solely on taxable properties that were wholly in existence and subject to taxation on January 1.

¶ 25   Even assuming A.R.S. section 42–221.01(A) creates a genuine classification, the classes are rationally distinct from one another in view of the type and extent of change in their physical characteristics after January 1.   A tax classification must reflect real differences and be reasonable. *See America West Airlines* at 531, 880 P.2d at 1077.   The members in one class change in value because they have either been legally and physically altered by parcel reconfiguration or physically altered by new construction.   The other class's value changes result from factors that do not significantly alter them either legally or physically.   Under the analysis of *America West Airlines,* the putative classification drawn by A.R.S. section 42–221.01(A) does not run afoul of the Uniformity Clause.

¶ 26   The trial court did not err in sustaining A.R.S. section 42–221.01(A) against the taxpayers' constitutional challenges.   Accordingly, the judgment is affirmed.

TOCI, C.J., and FIDEL, J., concur.

---

**4.**   Disapproved in part on other grounds, *Valencia Energy Co. v. Arizona Dep't of Revenue,* 191 Ariz.     565, 959 P.2d 1256, 270 Ariz. Adv. Rep. 3 (1998).