232 P.3d 768

George A. HORMEL II and Jamie R. Hormel, Trustees of the George A. Hormel II Trust, dated September 29, 1995, as amended, Plaintiffs/Appellants/Cross–Appellees,

v.

MARICOPA COUNTY, Maricopa County Board of Supervisors, and David Schweikert, in his capacity as the Maricopa County Treasurer, Defendants/Appellees/Cross–Appellants.

No. 1 CA–TX 07–0008.

Court of Appeals of Arizona, Division 1, Department T.

May 27, 2010.

---

Mooney, Wright & Moore, P.L.L.C. By Paul J. Mooney, Jim L. Wright, Mesa, Attorneys for Plaintiffs/Appellants/Cross–Appellees.

Law Office of Jerry A. Fries, By Jerry A. Fries, Phoenix, Attorney for Defendants/Appellees/Cross–Appellants.

## OPINION

WINTHROP, Presiding Judge.

¶ 1 This appeal from denial of special action relief arises out of an attempt by George A. Hormel II and Jamie R. Hormel, trustees of the George A. Hormel II Trust ("Taxpayer" or "the Trust") to enforce the payment of refunds based on reclassification of property

known as the Wrigley Mansion ("the Property") during tax years 2001, 2002, and 2003 pursuant to Arizona Revised Statutes ("A.R.S.") section 42–16254 (Supp.2009),[1] the property tax error correction statute. Maricopa County ("the County") opposes the payment of the refunds, arguing that any reclassification was improper. After the parties filed cross-motions for summary judgment, the tax court granted judgment in favor of the County as to the refund payment issue, denying Taxpayer's request for refunds. As discussed below, we reverse that part of the judgment, and we remand, directing the tax court to enter judgment in favor of Taxpayer.

¶2 In a cross-appeal, the County challenges denial of the part of its cross-motion seeking to revert classification of the Property from Class Six to Class Two for tax year 2004. However, we conclude that subsequent events have mooted this issue. Finally, we hold that the tax court did not abuse its discretion in declining to impose sanctions under A.R.S. § 12–349 (2003).

## FACTS AND PROCEDURAL BACKGROUND

¶3 In April 2004, Taxpayer filed a notice of claim with the Maricopa County Assessor ("the Assessor") regarding the Property's classification for purpose of the Arizona real property tax. At that time, the Property operated as a private club with a restaurant and bar. Its members—both individuals and corporations—paid fees to use the Property for weddings, banquets, and corporate events.

¶4 Taxpayer, through its tax agent, Neil Wolfe, sought to change the Property's classification from Class Two, with a sixteen percent assessment ratio, see A.R.S. §§ 42–12002 (2006), –15002 (2006), to Class Six (noncommercial historic property), with a five percent assessment ratio. See A.R.S. §§ 42–12006 (Supp.2009), –15006 (Supp.2009). The

proposed change would cover tax years 2001, 2002, and 2003, and would permit Taxpayer to obtain property tax refunds for those years.

¶5 Socorro Candelaria, the County's appraisal coordinator, disputed the claim in writing, although she provided no substantive reason for the denial, and scheduled a meeting with Wolfe.[2] The case was subsequently assigned to Cindy Head, a field appraiser for the County. Head contacted the State Historic Preservation Office ("the Office") in an effort to determine whether the Property qualified as noncommercial historic property.

¶6 On June 10, 2004, the Office faxed a response letter stating that the Property had been listed on the National Register of Historic Places since August 17, 1989. Head therefore concluded that the Property qualified for the requested Class Six, noncommercial historic classification, and she prepared the appropriate paperwork to grant the relief requested by Taxpayer. Steve Davis, Head's supervisor, approved the reclassification decision, and the Assessor corrected the classification on the "Parcel History" forms. On its own initiative and as a standard procedure, the Assessor (through Head) also updated the 2004 tax roll on the "Parcel History" forms to reflect the requested classification change.

¶7 At the scheduled meeting, Head and Wolfe formally documented the County's full consent to the classification change, see A.R.S. § 42–16254(E), after signing on June 29, 2004, three documents previously prepared by Head entitled "A.R.S. § 42–16254 Notice of Claim Meeting Decision—Real Property," each of which stated that the "Full Consent" was "the decision of the taxing authority." Nothing in the documents indicated that they were conditional, and none of the documents identified any items remaining in dispute.

---

1. We cite the current version of the statutes if no revisions material to our analysis have occurred during this litigation. Specifically, no amendments occurred to A.R.S. § 42–16254 after January 1, 1999, until August 12, 2005. Further, although the legislature amended subsection (E) of the statute in 2005 and 2006, the revisions are immaterial to our analysis. See 2005 Ariz. Sess. Laws, ch. 131, § 2 (1st Reg. Sess.); 2006 Ariz. Sess. Laws, ch. 134, § 1 (2nd Reg. Sess.).

2. See A.R.S. § 42–16254(D) (requiring the tax officer to schedule a meeting to discuss the basis for the dispute).

¶ 8 When the Assessor failed to issue the refunds, Taxpayer mailed a letter dated October 28, 2004, to David Schweikert, who was at that time the Maricopa County Treasurer ("the Treasurer"), to ascertain the reason for the delay. The Treasurer responded that, after contacting the Assessor's office, he understood the refund issuing process had begun.

¶ 9 Meanwhile, on January 29, 2005, Head received an e-mail from Candelaria, informing her that the internal paperwork, or "resolutions," related to the reclassification claim had not been processed and that Head should refer any future inquiries about the matter directly to Candelaria. Candelaria ultimately claimed that an internal "three-tier review process" would have to be completed before approval.[3]

¶ 10 On March 15, 2005, Head advised Wolfe for the first time that the resolutions would not be processed because the Assessor wanted additional information to justify the classification change. The deadline to appeal disputed items to the State Board of Equalization had already passed—198 days earlier.[4]

¶ 11 On June 17, 2005, Taxpayer filed a complaint in the Arizona Tax Court seeking (1) a declaratory judgment whether the County's Board of Supervisors ("the Board") and the Treasurer had fulfilled their statutory obligation under A.R.S. § 42–16254 to issue the refunds for tax years 2001 through 2003, and (2) a mandamus order directing the Board and the Treasurer to discharge their duties under A.R.S. § 42–16254(E) by issuing a refund of the taxes the Assessor had agreed were erroneously assessed. After the County answered, Taxpayer moved for summary judgment, arguing that the Assessor's consent obligated the Board and the Treasurer to issue the refunds as a matter of law. After obtaining an extension of time to respond under Rule 56(f), Ariz. R. Civ. P., the County on September 15, 2006, filed a response and cross-motion for summary judgment. In part, the cross-motion requested leave to reverse the County's correction of the 2004 tax roll.

¶ 12 The tax court's decision was highly critical of the County's handling of this matter, essentially concluding that the County had misled Taxpayer and improperly eliminated Taxpayer's ability to obtain further administrative review of the County's ultimate denial of the claim. However, the court, over the objections of Taxpayer, reached the merits of what it perceived to be the underlying issue as argued by the County, and ruled that the Property did not qualify for noncommercial historic status during the tax years at issue, thereby denying Taxpayer's motion for summary judgment. The court relied on A.R.S. § 42–12102(B) (2006), which requires a party filing an application for classification as historic property to file its application "during the valuation year preceding the first tax year for which classification is requested." The court also denied the County's cross-motion for summary judgment, specifically denying the County's request for relief "with respect to tax year 2004 and subsequent tax years." The court also noted that A.R.S. § 42–12102(C) provides that Class Six status, once requested, lasts for fifteen years before a new application must be submitted.

¶ 13 The County filed a motion for reconsideration, requesting in part that the tax court reconsider its characterization of the County's actions and its ruling on the 2004 tax year (and beyond). The court obliged in part, changing some of the descriptive language in its order, but it did not alter the substance of its ruling. The court denied "the issue of whether the property was properly assessed for tax year 2004" as "moot." The court also clarified it had not ordered

---

3. At the time of these events, such review process was neither documented in writing nor provided to taxpayers for informational or procedural purposes. Since these events, the County has changed its notice of claim forms to advise taxpayers explicitly of such internal review process and to condition final administrative approval of dispute resolution upon completion of such review.

4. *See* A.R.S. § 42–16254(F) (providing that a taxpayer must file a petition challenging any denial of a proposed correction within 150 days after the notice of claim is filed, or else the petition is barred).

that the Property receive Class Six status for fifteen years, but stated that was a legal consequence of its finding that the classification was validly granted (when the Assessor made the change for the 2004 tax year). The County was, however, not precluded from instituting an administrative error claim under A.R.S. § 42–16252 (Supp.2009) to correct the Property's Class Six classification for tax year 2004 and its effect on subsequent years, assuming that *res judicata* posed no bar.[5]

¶ 14 Approximately one month later, on March 6, 2007, the County sent notices of proposed correction for tax year 2004 to Taxpayer. Taxpayer timely consented to the 2004 correction, stating that it was doing so "*solely* to prevent any additional tax, interest or penalty to be imposed for the 2004 tax year." Taxpayer also reserved the right, however, to file a timely notice of claim to reclassify in future years.

¶ 15 On April 25, 2007, the tax court signed the form of judgment prepared by Taxpayer, reflecting the court's rulings on the cross-motions for summary judgment. The court adopted its previous findings of fact and conclusions of law, denied Taxpayer's motion for summary judgment with respect to tax years 2001 through 2003, and denied the County's cross-motion for summary judgment with respect to tax year 2004. We have jurisdiction to decide the subsequent timely appeal and cross-appeal pursuant to A.R.S. §§ 12–170(C) (2003) and 12–2101(B) (2003).

## ANALYSIS

I. *As A Matter Of Law, The Tax Court Erred In Denying Special Action Relief.*

¶ 16 After the superior court has accepted jurisdiction and determined the merits of a special action petition, "we review whether the court abused its discretion by its grant or denial of relief." *Ottaway v. Smith*, 210 Ariz. 490, 492, ¶ 5, 113 P.3d 1247, 1249 (App.2005) (citing *Files v. Bernal*, 200 Ariz. 64, 65, ¶ 2, 22 P.3d 57, 58 (App.2001)). The tax court's interpretation of the real property tax statutes raises a question of law that we

review *de novo*. *See Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 594, 826 P.2d 1217, 1220 (App.1991).

¶ 17 According to Taxpayer, once the Assessor approved the property classification change without taking exception, A.R.S. § 42–16254(E) required that the tax roll be corrected to reflect the new classification and any tax refund be paid with interest. At all times throughout the litigation, subsection (E) of § 42–16254 has provided in relevant part: "If, after the meeting, the parties agree on all or part of the proposed correction, the board of supervisors *shall* direct the county treasurer to correct the tax roll to the extent agreed, and any taxes that have been overpaid *shall* be refunded with interest...." (Emphases added.) For the reasons that follow, we agree with Taxpayer.

¶ 18 "Mandamus is an extraordinary remedy based upon the premise[ ] that the petitioner has a clear right to the relief sought...." *Sines v. Holden*, 89 Ariz. 207, 209, 360 P.2d 218, 219 (1961). The obligation to issue a refund is mandatory only if statutory requirements have been met. *See generally Harrington v. Knuckey*, 148 Ariz. 404, 407, 714 P.2d 1299, 1302 (App.1985) (explaining that a county treasurer's issuance of a tax deed "is mandatory so long as all statutory requirements have been met and no redemption has occurred" (citations omitted)); *see also Daystar Invs., L.L.C. v. Maricopa County Treasurer*, 207 Ariz. 569, 570, 573–74, ¶¶ 1–2, 17–24, 88 P.3d 1181, 1182, 1185–86 (App.2004) (holding that the county treasurer was entitled to question the propriety of a foreclosure action, commenced by the purchaser of a real property tax lien, and the court's order directing issuance of the deed).

¶ 19 In this case, the County argued, and the tax court agreed, that Taxpayer did not meet all of its statutory obligations in seeking reclassification. The statute on which the tax court focused and on which the County wishes to focus, however, is A.R.S. § 42–12102, not § 42–16254. Simply stated, the County argues that Taxpayer failed to request the reclassification and refunds in a

---

**5.** The record does not indicate that the County had previously filed a notice of error/notice of proposed correction pursuant to A.R.S. § 42–16252.

timely matter and consequently did not comply with A.R.S. § 42–12102; accordingly, any consent by the Assessor's agent was void for that reason alone, and the Class Two classification was not an error.[6] We disagree.

¶ 20 In construing statutes, our primary goal is to determine and give effect to the intent of the legislature. *John C. Lincoln Hosp. & Health Corp. v. Maricopa County,* 208 Ariz. 532, 541, ¶ 27, 96 P.3d 530, 539 (App.2004). We also have a duty to not interpret statutes in a manner that renders them meaningless or of no effect. *Id.* Instead, we interpret statutes in such a way as to give them a fair and sensible meaning. *City of Phoenix v. Superior Court,* 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). Also, when possible, we avoid making any part of a statute superfluous, contradictory, void, or insignificant. *See Devenir Assocs. v. City of Phoenix,* 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991); *State.v. Garza Rodriguez,* 164 Ariz. 107, 112, 791 P.2d 633, 638 (1990); *State v. Johnson,* 171 Ariz. 39, 42, 827 P.2d 1134, 1137 (App.1992).

¶ 21 In this case, the County's argument, and the ultimate ruling by the tax court, would be entirely appropriate had the County at the scheduled meeting disputed the claim being advanced by Taxpayer. At that point, Taxpayer could have elected to proceed with further administrative review, and the issue of the merits of such claim could have been presented to and considered by the State Board of Equalization and, ultimately, the tax court. *See* A.R.S. § 42–16254(F)–(G). Instead, the County's representatives, after performing the investigation they deemed necessary, reached an agreement with Taxpayer on the merits of the claim, thereby triggering the express provisions of § 42–16254(E). *See Valencia Energy Co. v. Ariz. Dep't of Revenue,* 191 Ariz. 565, 574–75, ¶ 28, 959 P.2d 1256, 1265–66 (1998) (instructing that, when a government agent acts within the general parameters of the agent's authority, even if the agent acts erroneously, the agent's representations are binding on the governmental entity); *see also John C. Lincoln Hosp.,* 208 Ariz. at 538, ¶ 13, 96 P.3d at 536 (finding that the County had waived its right to enforce a statutory requirement). Whether such action by the County is characterized as an informed decision (as urged by Taxpayer), waiver, an uninformed concession, or a mistake (as urged by the County), the bottom line is that an agreement was reached as anticipated and provided for in the statute; further, it was expressly approved by the field agent's supervisor. Once that agreement was reached, the direction to the Treasurer to correct the tax roll to the extent agreed and to refund any overpaid taxes became unconditional. *See* A.R.S. § 42–16254(E); *see also generally Ariz. Telco Fed. Credit Union v. Ariz. Dep't of Revenue,* 158 Ariz. 535, 539–40, 764 P.2d 20, 24–25 (App.1988) (holding that mandamus relief was available to a taxpayer seeking a refund for overpayment of previous years' taxes).[7]

¶ 22 Further, we are not persuaded by the County's assertion that Taxpayer, through its tax agent, knew or should have known that it was not entitled to historic noncommercial property tax classification, or the suggestion that Taxpayer targeted and "managed to confuse" an inexperienced and "uninformed" low-level administrative field agent[8] in an

---

6. In effect, the County contends that § 42–16254 is merely a "procedural" statute, and therefore is "trumped" by the "substantive" provisions of § 42–12102, which provides the requirements for an application for classification as historic property, as well as § 42–12101 (2006), which in part provides the definitional elements for the term "noncommercial historic property."

7. Based on our resolution of this issue, we need not address Taxpayer's contention that, as a result of what it perceives as inequitable conduct by the County's representatives, the County should be estopped from denying Taxpayer's claim. *See, e.g., Valencia,* 191 Ariz. at 576, ¶ 34, 959 P.2d at 1267 (holding that equitable estoppel

may lie against the government in tax matters). We also need not reach Taxpayer's contention that its substantive due process rights were violated.

8. At her January 5, 2006 deposition, Head testified that she had previously represented the Assessor with respect to approximately fifty other notices of claim. Similarly, in an affidavit dated September 5, 2006, Head averred that she had been employed with the Assessor's office since 1998 and had been assigned approximately fifty notices of claim. At her April 12, 2006 deposition, Candelaria testified that, with respect to Head's decisions regarding notices of claim, this

effort to "slip" a "deliberately fraudulent" and unqualified claim through the process. It is true that mandamus is, to a large extent, a discretionary writ, and that even where an absolute right to the public official's action is shown, inequitable conduct on the part of the party seeking the writ may preclude relief. *See Sines*, 89 Ariz. at 209, 360 P.2d at 220. However, we find nothing in the record to conclusively support the suspicions of the County as to the alleged motive or tactics of Taxpayer or its agent; more importantly, the tax court did not make any findings in that regard and its decision was not based on the County's allegations of improper conduct by Taxpayer or its agent. Further speculation about the effect of such evidence in the record or fact finding by the tax court is unnecessary.

## II. As A Matter Of Law, The Claim For 2004 Is Moot.

■ ¶ 23 In its judgment, the tax court also denied the County's cross-motion for summary judgment, pursuant to which the County sought to revert the Property's classification from Class Six to Class Two for tax year 2004.

¶ 24 The County challenges this ruling in its cross-appeal. However, Taxpayer, which was silent before the tax court as to the merits of this issue, contends that the issue is moot because, soon after the court denied the County's motion for reconsideration, the County issued for the first time notices of proposed correction with regard to the Property, and Taxpayer consented to reclassify the Property as Class Two for the 2004 tax year.[9] We agree with Taxpayer that the issue is moot.

■ ¶ 25 "A decision becomes moot for purposes of appeal where as a result of a change of circumstances before the appellate decision, action by the reviewing court would have no effect on the parties." *Vinson v. Marton & Assocs.*, 159 Ariz. 1, 4, 764 P.2d 736, 739 (App.1988) (citing *Ariz. State Bd. of Dirs. for Junior Colls. v. Phoenix Union High Sch. Dist.*, 102 Ariz. 69, 73, 424 P.2d 819, 823 (1967)). That is the case here. Taxpayer has consented not to pursue the litigation as to the 2004 tax year. Further, because Taxpayer conceded the issue for tax year 2004, the Class Six classification will not remain in effect for succeeding years under A.R.S. § 42–12102(C). Instead, the Property is subject to Class Two classification for the 2004 tax year and subsequent tax years unless, of course, it is timely and properly reclassified. *See generally* A.R.S. §§ 42–12102, –12103(B) (2006). Finally, because Taxpayer timely consented to the County's notices of proposed correction for tax year 2004 after the notices were initially sent to Taxpayer in March 2007, the County is incorrect that Taxpayer owes additional taxes for tax year 2004 based on a failure to consent.[10] *See* A.R.S. § 42–16252(D). Accordingly, the County's challenge to the tax court's denial of the County's cross-motion to revert the Property's Class Six status to Class Two status for tax year 2004 is moot. *See generally Smith v. Smith*, 117 Ariz. 249, 251, 571 P.2d 1045, 1047 (App.1977) (recognizing that the issue whether the trial court had jurisdiction to enter an earlier custody order was moot because the parties participated in later proceedings resulting in the entry of a valid order establishing custody).[11]

---

was the only agreement that Candelaria had overridden.

**9.** As we have noted, Taxpayer also stated that it consented to the 2004 correction solely to prevent any additional tax, interest, or penalties from being imposed, and it reserved the right to file a timely notice of claim to reclassify in future years.

**10.** If real property has been assessed improperly as a result of a property tax error, the County must send the taxpayer a notice of error, which shall explain the error, the reasons for the error, and the proposed correction of the error. *See*

A.R.S. § 42–16252(A), (B)(3). The taxpayer then has thirty days to either consent or dispute the proposed correction of the error, although a failure to timely respond constitutes consent. A.R.S. § 42–16252(C). If the taxpayer consents to the proposed correction, as occurred here, "the tax roll shall be promptly corrected to allow property taxes to be levied and collected in all subsequent tax years, but no additional tax, interest or penalty may be imposed for the current tax year or any tax year preceding the date of the notice of error." A.R.S. § 42–16252(D).

**11.** Although this court will consider moot questions if the legal issues are of great public importance or capable of recurring yet evading review,

### III. The Tax Court Did Not Abuse Its Discretion By Denying The County's Motion For Sanctions.

¶ 26 Finally, the County argues that the tax court erroneously denied its motion for sanctions in the form of attorneys' fees pursuant to A.R.S. § 12–349(A)(3) and (4). The County claims that Taxpayer unreasonably expanded the proceeding by failing to grant an extension of time to respond to the summary judgment motion and engaging in discovery abuses.

¶ 27 In general, we review for an abuse of discretion the court's denial of attorneys' fees. *See Graville v. Dodge*, 195 Ariz. 119, 131, ¶ 56, 985 P.2d 604, 616 (App.1999). However, our standard of review for the tax court's decision to deny a motion for sanctions and fees under A.R.S. § 12–349 is *de novo*. *See City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 555, ¶ 27, 20 P.3d 590, 598 (App.2001) (stating that this court reviews the trial court's findings of fact under a clearly erroneous standard, but its application of § 12–349 is a question of law reviewed *de novo* ).

¶ 28 As Taxpayer points out, the County's Rule 56(f) motion did not incorporate an affidavit specifying the evidence beyond its control, the evidence's location, what it anticipated the evidence would reveal, how the discovery sought would provide it with information necessary to respond to Taxpayer's motion, and the end date for requested discovery. *See Magellan S. Mtn. Ltd. P'ship v. Maricopa County*, 192 Ariz. 499, 502, ¶ 8, 968 P.2d 103, 106 (App.1998) (citing *Lewis v. Oliver*, 178 Ariz. 330, 338, 873 P.2d 668, 676 (App.1993)). Despite this deficiency, the County believed it was entitled to sanctions based on the tax court's ruling on the County's prior motion to compel and because Taxpayer's alleged ongoing refusal to comply

with discovery obligations had hampered the County's ability to defend this case.

¶ 29 The tax court, however, had only granted the prior motion to compel with respect to one request for admission and a request to identify persons involved in preparing and/or authorizing the filing of Taxpayer's notice of claim. In granting the motion to compel, the court stated that it did "not take the narrow view of discovery and disclosure advocated by the taxpayer," but its ruling did not preclude Taxpayer from taking the position it did with respect to the Rule 56(f) motion. *See Magellan*, 192 Ariz. at 502, ¶¶ 8–10, 968 P.2d at 106 (finding no abuse of discretion in the trial court's decision to consider a summary judgment motion in light of the opposing parties' vague and unsworn Rule 56(f) motion). Further, Rule 56 does not require that discovery be completed before a court rules on a motion for summary judgment. *See id.* at 501, ¶ 7, 968 P.2d at 105.

¶ 30 In light of this record, we cannot endorse Taxpayer's counsel's refusal to grant an extension.[12] Further, a greater degree of courtesy and cooperation on the part of Taxpayer's counsel relative to disclosure and discovery obligations would have been much preferred. However, the trial court is in the best position to evaluate the quality and motivation of counsel in litigation, *see, e.g., State v. Gay*, 214 Ariz. 214, 221, ¶ 19, 150 P.3d 787, 794 (App.2007) (recognizing that the trial court is in the best position to make credibility determinations to evaluate the sincerity of counsel), and, based on this record, we cannot say that the tax court abused its discretion in denying the County's request for sanctions.

### CONCLUSION

¶ 31 We reverse the tax court's grant of summary judgment against Taxpayer and in

*see Slade v. Schneider*, 212 Ariz. 176, 179, ¶ 15, 129 P.3d 465, 468 (App.2006), this case does not present a suitable context for addressing the County's claim.

**12.** In Arizona, the lawyer's creed of professionalism provides that attorneys are to cooperate with each other on extension requests. *See* Ariz. R. Sup.Ct. 31 (A Lawyer's Creed of Professionalism of the State Bar of Arizona) (stating that, in

litigation proceedings, the lawyer "will agree to reasonable requests for extensions of time or for waiver of procedural formalities when the legitimate interests of [the] client will not be adversely affected"). Further, in being admitted to the Arizona State Bar, lawyers swear an oath to "at all times faithfully and diligently adhere to the rules of professional responsibility and a lawyer's creed of professionalism of the State Bar of Arizona." *Id.* (The Oath of Admission to the Bar).

favor of the County for the tax years 2001 through 2003, and remand with directions for the tax court to grant special action relief to Taxpayer in that regard. In addition, we decline to reach the moot issue regarding the 2004 tax year reclassification. Further, we conclude that the tax court did not abuse its discretion in declining to award sanctions under A.R.S. § 12–349. Finally, conditioned upon compliance with Rule 21, ARCAP, we award Taxpayer its attorneys' fees pursuant to A.R.S. § 12–2030 (2003).

CONCURRING: PHILIP HALL and MAURICE PORTLEY, Judges.