[Civil No. 2601. Filed December 19, 1927.]

[262 Pac. 5.]

## J. L. McIVER and ROBERT McIVER, Appellants, v. L. S. ALLEN, Appellee.

Messrs. Elliott & Swenson, for Appellants.

Mr. L. J. Cox, for Appellee.

McALISTER, J.—An automobile accident in which L. S. Allen, referred to herein as plaintiff, was injured occurred January 15th, 1926, on North Central Avenue, Maricopa county. About 7:15 P. M. he was going north in a Ford sedan on the right-hand or eastern side of the pavement, and when about one-quarter of a mile north of the Indian School Road turned directly west across the highway to enter the home of a Mr. Vickery, and as his car was

almost clear of the pavement on the west side, lacking perhaps a foot or so, it was struck by a car going north on Central Avenue, driven by Robert McIver, and turned over on its right side. He was thrown from the car and injured, and in an action for damages against Robert McIver and his father, J. L. McIver, hereinafter designated defendants, recovered judgment for $2,000. From this and the denial of their motion for a new trial they appeal.

It appears from the testimony of the plaintiff that prior to making the left-hand turn he had been traveling at a rate of 10 miles per hour, but having his mother-in-law, aged 75, with him and the driveway beyond the pavement being very rough on account of a gully and a narrow bridge, he slowed down to four or five, or as a man would walk, in order that he might cross without mishap, and continued this gait until the accident occurred. At the time no cars were approaching from the north but there were some from the south. About 250 feet from where he started to cross the highway he looked back and saw cars coming, and after going about 50 feet held out his hand as a signal that he was going to turn to the left and kept it there until he began to turn, through a distance of nearly 200 feet, when he found it necessary to use it on the steering wheel. Just as he started to make the turn, which was about 30 feet from the point of collision, he glanced back and saw light through his rear window but no cars, though he knew ''that there were cars back of'' him—that ''the car was there.'' He thought the lights were 150 feet back, though he could not be exact. At any rate it was his impression that he had sufficient time to cross before a car could pass him, and after starting to make this 30-foot distance he did not attempt to ascertain how close cars were approaching until he was directly over the west edge of the pavement when, because lights

indicated a car was right on him, he looked to the south and saw a Packard driven by defendant Robert McIver within 10 or 15 feet of his car and coming toward him at 30 miles an hour. There was no time then, he said, to do anything to avoid a collision, though he had no idea at all that the Packard was going to hit him. Roughly speaking, it took him perhaps 15 or 20 seconds to cross the highway from where he started to turn.

It appears from the testimony of other witnesses that when the plaintiff started to turn across the highway there were two cars about 150 feet back of him going the same direction he was, one of these being a Franklin driven by F. M. Griswold and the other a Packard driven by defendant Robert McIver. Griswold, who was directly to the rear of plaintiff, testified that about this distance back he planned to pass the Ford but heard a motor behind him and looking back to see what it was saw a Packard coming at a pretty good rate of speed, approximately 45 miles an hour judging from the sound and noise of the motor and the distance the car slid, though from his experience in driving Packard Twin Sixes and practically every make of car this was putting it low. This speed, however, continued for only a short distance, five or six feet probably, and when the Franklin was within about 125 feet of the Ford the Packard started to turn out and came up along the Franklin's left side as though the driver's purpose was to pass both the latter and the Ford. It never went completely by the Franklin, but reached a point about three-fourths of the latter's length farther along than it was and maintained it until the collision occurred. After they had gone a short distance in this position the Ford started to make a left-hand turn across the highway, and the Packard driver, evidently thinking he could pass in front of it, went to the left side of the road, but realizing

when he got very close to it that he could not do this turned sharply to the right and passed behind it with the result that the rear of the Packard "slid around, hitting the rear end of Allen's car," knocking it over on its right side. A few feet farther on the Packard and the Franklin collided, the right side of the former and the left front of the latter coming together, but they both stopped to the right of the road, the Packard being some 15 or 20 feet beyond the point of collision with the Ford, the Franklin standing just to its right.

According to Griswold, who heard them, and witnesses who measured the skid marks made on the left side of the pavement by the left rear wheel of the Packard, its brakes were applied 69 feet south of the point where it and the Ford came in contact. In the judgment of Griswold, McIver "was going 30 miles an hour at least when the collision occurred," and his own car was traveling approximately 20, though he had been going around 25 until he saw an accident was unavoidable, when he put on the brakes and "turned sharp to the right off the road." He did not see the plaintiff give a signal that he was going to turn to the left, neither did he expect one since it was merely a private driveway and not a place where one would naturally look for a car to turn; and from experiments made by him later in the evening he was doubtful whether such a signal if given could have been seen though probably the hand but not the arm or coat sleeve might have been. In his opinion, "it would take at least 100 feet to stop a Packard car, 1920 model, with single brakes, traveling at the rate of 30 miles per hour. McIver's turning sharply to the right and attempting to pass to the rear of Allen had a tendency to stop his car. I think the blow from the Franklin car would tend to slow it up." After the accident, and when they started to

take the license numbers, McIver asked them "to please hurry; he had an engagement up the road at 7:30 and he was late then."

According to the testimony of defendant Robert McIver, he was in full view of the Ford when it started to make the turn, but, notwithstanding the place was one where a left-hand turn would not be expected and he was only 60 or 70 feet from it at the time, he saw no signal that one was to be made. When the Ford started across the road the Franklin was behind and to the right of him going the same direction, and, realizing there was a possibility of a collision, he immediately put on his brakes. The only chance of missing it was by going behind it; there was none by passing in front. Being at the time on the left-hand side of the road with the intention of passing it and the Franklin, he made a curve to go behind it and just barely hit it with the rear of his car, stopping about 15 or 20 feet farther along. The impact of the Franklin car tended to throw his car forward. His brakes were in good shape but noisy, and the lighted area from the lamps of his car extended the full width of the pavement about 150 feet ahead, and the Ford was in this lighted area when it turned and drove across. He was going between 32 and 35 miles an hour when he passed the Franklin running about 30, and somewhere between five and ten when he hit the Ford. While skidding and until he got within a few feet of the point of collision he was undecided where to go or what to do. A Packard will skid going 15 or 16 miles an hour if one turns sharply. He judged the speed of his car by a rumbling in the gear-box which develops at a 35-mile gait, and he started to go into that rumble just before he applied his brakes.

Appellant assigns several errors, the first one being that the court erred in denying defendant's motion for an instructed verdict made at the close

of all the evidence in the case. This motion was based upon the ground that the plaintiff had not only failed to prove that the defendant Robert McIver was negligent in the manner alleged, but that it affirmatively appeared that he was not. The complaint alleges that the defendant drove his car in such a reckless, careless, negligent and unlawful manner as to cause it to strike or collide with the car driven by plaintiff, and it developed at the trial that the negligence principally relied upon was that under the circumstances he was driving at an unreasonable rate of speed. All the testimony upon this question is found in the statements of the plaintiff, the defendant, the witness Griswold, and the physical facts at the scene of the accident. The defendants contend that it is clear from a consideration of the facts as testified to by the plaintiff and his witnesses that Robert McIver was traveling a reasonable rate of speed when he first saw the plaintiff making a left-hand turn across the highway. Their argument is that though the plaintiff did place the Packard's speed at 30 miles an hour when it was only 10 or 15 feet away from his car, and Griswold at 45 when he first noticed it coming up behind him, and at 30 at the moment of the collision, yet, because the latter testified also that he saw defendant traveling 45 miles an hour for a few feet only and that the Packard never completely passed the Franklin, whose highest speed was 25 miles per hour, the defendant was not going over 35 miles, the limit under the law at that place (chap. 27, Laws Sp. Sess. 1922), nor at a rate of speed less than that which under the circumstances the law would designate as negligent. This is especially true, it is claimed, because he was not approaching an intersection where a left-hand turn might be anticipated, there was no traffic from the north close by, and the slow-moving vehicles he was going to pass were well to the right-

hand side of the pavement. The fact, however, that the Packard never completely passed the Franklin while running only 25 miles an hour does not necessarily disprove the statement that it was traveling 45 or better when Griswold first saw it coming up behind him. Neither does the fact that it was not going quite so fast when it came up alongside of the Franklin and was in the act of passing it have this effect. But the fact that after its brakes were applied it skidded 69 feet, turned sharply to the right before striking the Ford with sufficient force to knock it over, then went 15 or 20 feet farther and collided with the Franklin before stopping, tends to corroborate Griswold's statement as to its high rate of speed and is sufficient in connection therewith to justify the conclusion that as the defendant approached the scene of the accident or came into what proved to be the danger zone he was driving in a negligent and unlawful manner. His request ''to please hurry, he had an engagement up the road at 7:30 and he was late then,'' made immediately following the accident, doubtless aided the jury to some extent in coming to this conclusion.

The defendants claim further that no proper signal of plaintiff's intention to make a left-hand turn was given and consequently that the defendant was permitted to come into the situation unwarned of this purpose. Such being the case, they argue that he could not have been negligent because, as said in *Crawford* v. *Kansas City Stockyards Co.,* 215 Mo. 394, 114 S. W. 1057, ''a man is not required to look for danger when he has no cause to anticipate danger.'' This view assumes that the evidence discloses that no proper signal was given, when, it occurs to us, the testimony on this point is such that it was for the jury to say whether it was or not. The plaintiff testified that he held out his hand through the 200 feet immediately preceding the making of

the turn, and while Robert McIver and Griswold both testified that they did not see it, yet they stated that they were not anticipating a turn at that time since it was not at an intersection, and the latter added that the hand, if not the arm and coat sleeve, might probably have been seen from that distance. And it should be remembered in addition that while North Central Avenue at the point of the accident is outside the city limits of Phoenix, yet there are a great many homes on it and one driving a car along it or any such highway must keep in mind that lefthand turns to reach these are frequently made.

Whether the plaintiff did or did not give the proper signal, the defendant Robert McIver could not be held negligent if at the time he was driving in a proper and lawful manner. But, the evidence being such that the jury might have concluded therefrom that he did not handle his car in this way, the plaintiff's failure to give the signal would not excuse him from the charge of driving at an unreasonable rate of speed and relieve him from the consequences thereof unless such failure was the proximate cause of the injury. Driving at an excessive rate of speed, however, must have been the cause of the accident before it can do more than establish a *prima facie* case against the defendants, for merely driving on the wrong side of the road or at a rate of speed in excess of that provided by statute is not negligent *per se*, but will sustain a verdict only when it is shown that it was the proximate cause of the injury. *Peterson* v. *Pallis,* 103 Wash. 180, 173 Pac. 1021; Berry on Automobiles (8th ed.), p. 334; *Needy* v. *Littlejohn,* 137 Iowa 704, 115 N. W. 483; *Morrison et al.* v. *Clark,* 196 Ala. 670, 72 South. 305; *Moore* v. *Liddell Bros. Candy Co., Inc.,* 155 La. 1018, 99 South. 856; *Sheffield* v. *Stone-Ordean-Wells Co.,* 49 N. D. 142, 190 N. W. 315.

The second assignment is also based on the denial of the motion for a directed verdict, but upon the ground that it affirmatively appears from the facts that the plaintiff himself was negligent and that such negligence was the proximate cause of his injury. In support of this assignment, defendants contend that the evidence and all fair inferences therefrom conclusively establish the fact that the plaintiff with the knowledge of probable danger to himself left a place of security and went into a place of danger, without taking any precautionary measures for his own safety, when by the exercise of due care he could easily have avoided the peril which was open and visible. It is of course true that the driver of a car desiring to make a left-hand turn between intersections across a much-traveled highway should exercise extra precaution before attempting it, for the reason that such turns are less frequent than at crossings and naturally are not anticipated to the same extent. However, by the exercise of the care such dangerous turns require they may be made, and it is for the jury to say in any particular case whether such care was used, unless the evidence is such as to show without dispute that it was not. In *Hartley* v. *Lasater et ux.,* 96 Wash. 407, 165 Pac. 106, the court, in speaking of a motorcyclist who turned across the street in front of a moving car without giving any signal of his intention, said:

"Whether the respondent exercised due care for his own safety when he turned across the path of the automobile, without looking or without giving any warning sign, is a question for the jury."

While the denial of the motion for a directed verdict for the defendants on the ground that the plaintiff's injury was the result of his own negligence was proper, the evidence introduced by the plaintiff himself was such that the defendants were entitled to an instruction on contributory negligence.

They requested and submitted several instructions on this question, but the court refused them upon the ground that contributory negligence had not been pleaded as a defense, and the refusal of each instruction is made the basis of an assignment, but they are argued together. In taking the view it did the trial court was undoubtedly guided by the rule well settled in this jurisdiction and followed doubtless by a majority of the courts, that before the defendant can avail himself of contributory negligence as a defense he must plead it. *De Amado* v. *Friedman,* 11 Ariz. 56, 89 Pac. 588; *Bruno* v. *Grande,* 31 Ariz. 206, 251 Pac. 550. In both of these cases, however, this court said that there is this well-recognized exception to the rule that when the fact of contributory negligence is disclosed by the evidence introduced by the plaintiff, the "defendant is entitled to take advantage of such disclosure notwithstanding the fact that he has made no plea of contributory negligence."

The plaintiff recognizes this rule, but contends that the defendant cannot avail himself of it unless the evidence produced by the plaintiff is such that the court can say as a matter of law, not of fact, that he was guilty of contributory negligence and that a verdict rendered in his favor would be set aside on a motion for a new trial. The weight of authority is in line with this view, as the cases cited by plaintiff clearly disclose (*Irwin* v. *McDougal et al.,* 217 Mo. App. 645, 274 S. W. 923; *Mellon* v. *Great Northern Ry. Co.,* 116 Minn. 449, Ann. Cas. 1913B 843, 134 N. W. 116), but inasmuch as the Constitution of this state (§ 5, art. 18) provides that the defense of contributory negligence "shall, in all cases whatsoever, be a question of fact and shall, at all times be left to the jury," the rule does not obtain in this jurisdiction. If the evidence in behalf of the plaintiff is such that the jury may rea-

sonably conclude therefrom that he was guilty of contributory negligence, it is immaterial whether the court is of the same view or not. When the question is fairly raised by such testimony and a verdict for the defendant is sustainable thereunder, an instruction permitting the jury to pass upon it should be given. The jury is the sole judge of the sufficiency of such evidence to show contributory negligence, much the same as it determines both law and facts in a case of criminal libel, and the court's only duty is to decide the preliminary question, whether the plaintiff's evidence fairly presents it, and, in case it does, submit it by proper instructions.

Whether the plaintiff's evidence is such that the court could have said as a matter of law that it shows contributory negligence is immaterial, for it is clear that it raises the question, and consequently the jury should have been allowed to determine it. The testimony of the plaintiff himself is that it was 30 feet or more from where he started to turn to where the collision occurred, and that it took him perhaps 15 or 20 seconds to make it; that he withdrew the signal indicating his intention to make a left-hand turn as he started to make it, the on-coming cars then being about 150 feet away; that as he was turning he did not look to see how close the cars were approaching until he was almost across because the road beyond the pavement was rough and he was thinking of getting his mother-in-law over in comfort and safety. It should have been evident to the plaintiff that he was placing himself in a perilous position by turning in front of a car only 150 feet away and approaching at a rate of 30 or 35 miles an hour while he was going at a speed of only four or five. The dictates of common prudence, it occurs to us, should have suggested to him that the car might be along before he could cross. It is true he claims that he had given the proper signal and

thought that the drivers of the cars would reduce their speed to such an extent that it would not be dangerous to cross, but it must be remembered that it was between intersections where such a turn was not anticipated to the same extent it would have been at a crossing, that it was night-time and therefore more difficult to see the hand indicating such an intention, and that it is probable that he withdrew it before the defendant Robert McIver was close enough to see it.

The danger of left-hand turns on much-traveled highways between intersections is so great that they should not be attempted without the exercise of extra precaution. The peril of such turns is so well recognized that they are not permitted at all at certain street intersections even upon the exercise of the greatest care. We are of the view, therefore, that, notwithstanding the fact that the defendant Robert McIver may have been running at an unreasonable rate of speed at the time of the accident or so immediately prior thereto, that he did not then have control of his car, he and his co-defendant were entitled to an instruction permitting the jury to say whether the plaintiff did not by his own negligence contribute to his injury. If such an instruction had been given and the jury had believed that he did, its verdict under the law should have been for the defendants, and a judgment based thereon could not have been successfully attacked upon this ground.

In view of the conclusion reached on this assignment it is unnecessary to notice the others, since, if well taken even, it is improbable that they will occur at the second trial.

The judgment is reversed and the cause remanded, with direction to grant a new trial.

ROSS, C. J., and LOCKWOOD, J., concur.