286 P.2d 199

George RIVERA and Mary Rivera, husband and wife, Appellants,

v.

E. V. HANCOCK and Jean Hancock, husband and wife, Appellees.

No. 5778.

Supreme Court of Arizona.

June 28, 1955.

V. L. Hash, Phoenix, for appellants.

Shimmel, Hill & Hill and Harry J. Cavanagh, Phoenix, for appellees.

UDALL, Justice.

The plaintiffs, George Rivera and Mary Rivera, his wife, brought this action against defendants E. V. Hancock and Jean Hancock, his wife, to recover damages in the aggregate sum of $55,000 for personal injuries they allegedly sustained in a collision with defendants' car. The case was tried to the court, sitting with a jury. The jury returned a verdict in favor of defendants and judgment was entered thereon; motion for new trial was made and denied and this appeal followed. Plaintiffs appear here as appellants, the defendants as appellees, but they will be referred to as plaintiffs and defendants.

The scene of this unique accident is difficult to describe in words and may best be visualized by a diagram thereof which we have had prepared from exhibits in evidence:

**INTERSECTION**
**35ᵀᴴ AVE. & VAN BUREN**
SCALE 1" = 20'

202

While there was a sharp conflict in the testimony as to certain vital points we will follow the accepted procedure on appeal and state the substance of the evidence in a light most favorable to sustaining the verdict and judgment. On the morning of August 31, 1951, shortly before 8:00 a. m., plaintiff George Rivera was driving his automobile, a 1934 Ford V–8 Sedan, from his home at 3302 West Jefferson Street, in Phoenix, Arizona, to his place of employment at Reynolds Aluminum Plant. He was accompanied by his wife (seated on his right), who intended to drive the car back home. At about the same hour, defendant E. V. Hancock, driving his 1951 Studebaker Champion car, was taking his wife Jean to her work at the same plant, an industry employing 1200 to 1800 persons.

The diagram heretofore shown discloses that the two parallel roads of ingress and egress to the Reynolds Plant, if projected would bisect at a 45-degree angle the intersection of 35th Avenue—which runs north and south—and of Van Buren Street —which goes east and west. At this point five-way traffic control signal lights are installed. There was testimony that at 8 a. m. (and other times of change of shift) this area was a "bee hive" of activity with pedestrians and cars moving in and out on the roads leading to the plant.

Defendant E. V. Hancock had driven in the ingress road to the front of the Administration Building, where he let his wife out of the car, and was then proceeding northeasterly on the egress driveway en route to the Van Buren–35th Avenue intersection when the collision occurred. Hancock claimed he was proceeding on a green signal light.

Just immediately prior thereto the plaintiffs were proceeding north on 35th Avenue and had come to a complete stop at a point 100 feet south of the intersection of this Avenue and Van Buren Street. According to plaintiffs' evidence, when the green signal light appeared they, in accordance with custom, turned left from the point where they had stopped in an arc movement which would lead them into the ingress road. (No one going north on 35th Avenue intending to go into the Reynolds Plant would first drive into the intersection, as such an operation would require making a U turn.) Plaintiffs' movement necessitated traversing not only the west portion of the right of way of 35th Avenue but also the paved area on the Reynolds property used by "outgoing" traffic from the private driveway.

It is to be noted that both drivers claim they were proceeding on a green signal light. Obviously both cannot be right as these overhead traffic lights, installed by the Maricopa County Highway Department, were so arranged that when the green "go" signal was on for travel on 35th Avenue, there would be a red "stop" signal on both Van Buren and the diagonal egress road leading from the plant; likewise when the egress road had a "green" light, the control

lights for both Van Buren and 35th Avenue would show "red".

The defendants' right bumper, grille and right fender struck the left side of plaintiffs' car near the left front door. The point of impact was some few feet (10 or more) from the northeast corner of the rounding 6-inch concrete curb marking the boundary of the "island", which is a raised 20-foot grass strip between the two driveways. Manifestly the accident did not occur within the 66-foot-square quadrangle comprising the intersection proper of 35th Avenue and Van Buren Street. Rather it was on Reynolds private property. Defendant Hancock admitted that he was driving at a speed of 25 to 30 m. p. h. when he first observed the plaintiffs' car. He immediately applied his brakes and the tires left 27 feet of skid marks on the pavement. The defendants' car came to a complete stop at the point of impact whereas plaintiffs' car, which was going 10 or 12 m. p. h., rolled 59 feet after the accident. There is no question but that the plaintiff George Rivera suffered severe permanent injuries that were most painful; the wife was less seriously hurt.

The plaintiffs' complaint alleged that the defendants "did wantonly, carelessly, wilfully and negligently drive their said automobile against the red light, and into the intersection at a high and negligent rate of speed * * *." The two specific acts of negligence alleged were driving at a speed in excess of 40 m. p. h. and driving against the red light. The defendants' answer consisted of a general denial, and alleged that the accident and injuries complained of were proximately caused by the contributory negligence of plaintiffs. It was therein specifically alleged " * * * that as he (E. V. Hancock) approached said intersection, the signal light controlling northeast-bound traffic on said diagonal road being green * * *."

Plaintiffs have presented some eight assignments of error supported by six propositions of law which we will not set forth seriatim but consider in such order as seems best.

The giving of the following instruction is assigned as error:

"You are instructed that the danger of left-hand turns on much traveled highways between intersections is so great that they should not be attempted without the exercise of extra precaution. Left-hand turns by automobile between intersections on much traveled highways are less frequent than at crossings and naturally are not anticipated to the same extent. If you find by a preponderance of the evidence that the plaintiff, in making the left hand turn into the private roadway, did not exercise extra precaution and entered such private driveway before ascertaining that it could be entered with reasonable safety, then I charge you that the plaintiff was guilty of negligence, and if you further find such negligence

caused or contributed to the collision, * * * then your verdict must be for the defendant."

Among other objections to this instruction, they advance the proposition that it " * * * puts an extra burden of care on plaintiffs."

The principle that one making a left turn from a public street into a private driveway must exercise "extra precaution" was first established by this court in the case of McIver v. Allen, 33 Ariz. 28, 262 P. 5, and has since been approved in the case of Phoenix Baking Co. v. Vaught, 62 Ariz. 222, 156 P.2d 725, both being cases in which a car turning left into a private driveway between intersections was struck from the rear by a car going in the same direction proceeding along the same street. In the McIver case, supra [33 Ariz. 28, 262 P. 9], we stated:

"* * * The dictates of common prudence, it occurs to us, should have suggested to him [the turning driver] that the [following] car might be along before he could cross. It is true he claims that he had given the proper signal and thought that the drivers of the cars would reduce their speed to such an extent that it would not be dangerous to cross, but it must be remembered that it was between intersections where such a turn was not anticipated to the same extent it would have been at a crossing * * *.

"The danger of left-hand turns on much-traveled highways between intersections is so great that they should not be attempted without the exercise of extra precaution. The peril of such turns is so well recognized that they are not permitted at all at certain street intersections even upon the exercise of the greatest care. * * *"

The logical basis for this pronouncement, under the facts there shown to exist, is apparent. Certainly one who seeks to turn from a much traveled highway into a private driveway must take extra precautions not to interfere with travelers proceeding in either direction along such highway, for left turns between intersections cannot be fully anticipated by such travelers, and their right to proceed in safety is superior to the right of the person making such a turn. However, we are of the opinion *this rule applies only as between the drivers of motor vehicles turning from and those proceeding along the particular highway from which the left turn is being made*, and hence the instruction complained of had no application to the facts of the instant case and should not have been given. Here plaintiffs had safely completed their left hand turn across 35th Avenue and were proceeding across paved private property to reach the ingress portion of the Reynolds driveway. Defendant, on the other hand, was proceeding out of the egress driveway across the same paved area—on the Reynolds property—when the collision occurred. In such a situation we cannot see how either party owed the other the duty to take

"extra precautions", but consider each owed the other a duty to use ordinary care under all the circumstances. We hold therefore that the trial court erred in giving the instruction of which complaint is made. Further we are of the opinion that the giving of this instruction was so prejudicial as to require a reversal. The effect of this instruction was to tell the jury that unless the plaintiffs exercised extraordinary care, they were not entitled to recover and the imposition of this extraordinary duty upon the plaintiffs had the effect of depriving them of a fair trial. Accordingly, the judgment must be reversed and a new trial granted.

In view of the fact that a new trial is being ordered we feel that some guidance should be given the trial court as to those questions urged on the appeal which may again arise.

■ As we have heretofore stated, there were in existence overhead traffic control signals which governed movements on both public streets and to a certain extent from the Reynolds driveway. Each party alleged in their pleadings, as well as tesified that at the moment of impact they had the green light. Counsel for defendants agreed with plaintiffs that "The lights control the whole thing here." However, the trial court took the view that this signal controlled only the movement of vehicles entering the intersection, i. e., the quadrangle area bounded by the extension of the right of way of 35th Avenue and Van Buren Street, and therefore refused to give an instruction requested by plaintiff to the effect that if the light controlling the movement from the Reynolds driveway was red, defendant was negligent.

Section 66–153g, A.C.A.1939, as amended, 1952 Cum.Supp., 1954 Supp., provides:

"(c) Red alone or 'stop':

1. Vehicular traffic facing the signal shall stop before entering the cross walk on the near side of the intersection or, if there is no cross walk, then before entering the intersection * * *.

*   *   *   *   *   *

"(e) In the event an official traffic control signal is erected and maintained at a place other than an intersection, the provisions of this section shall be applicable except as to those provisions which by their nature can have no application. Any stop required shall be made at a sign or marking on the pavement indicating where the stop shall be made, but in the absence of any such sign or marking the stop shall be made at the signal."

We therefore have before us an anomalous situation where both parties maintain their movements were governed by the green light, and yet no mention of the control signals or of their effect on the parties was made in the instructions.

We are of the opinion, as heretofore indicated, the trial court properly defined the limits of the intersection. Section 66–151m, 66–151n, 1952 Cum.Supp. to A.C.A. 1939. It follows that plaintiff, proceeding north on 35th Avenue, was by statute required only to stop "before entering the cross walk" on the south side of Van Buren Street, and hence his privilege to turn left into the Reynolds driveway area before reaching this point was, under the statute, in nowise affected by the signal. Likewise, since there was no "sign or marking on the pavement" indicating where defendant, proceeding out the driveway, was to stop, he was not, under the statute, required to stop until he reached the intersection as defined above.

■ However, there was evidence which indicated, if not clearly established, the existence of customs controlling the movement of cars in this paved private area. The evidence clearly revealed that a person proceeding north on 35th Avenue would commence the left turn into the Reynolds driveway some distance south of the intersection, but *only when* the light controlling traffic on 35th Avenue into the intersection was green. Likewise there was some slight evidence that it was the practice for drivers proceeding out of the Reynolds driveway into the intersection to stop—when the red light was against them—at the northernmost end of the "island", thus leaving the paved area (approx. 50 feet) between the stopping point and the intersection open for the movement of cars entering from 35th Avenue as referred to above. If, on the retrial such customs are established, then the trial court should instruct the jury as to the bearing the customs have on such movements. See statements in 55 Am.Jur., Usages and Customs, section 44, entitled "Liability for tort as affected by custom or usage."; 38 Am.Jur., Negligence, section 34.

■ The assignment claiming error in using the phrase "burden of proof" in the stock instructions given by the court, instead of the term "burden of evidence" is rather splitting hairs and in any event it is not deserving of treatment because no objection was made thereto before the jury retired to consider their verdict. The trial court, therefore, had no opportunity to pass upon the objection now being made.

■ The deposition of Roy W. Turner, an eyewitness, was taken and in answer to a question as to what speed defendant was making he stated:

"A. Hard to estimate actual speed, but I would say roughly 30 miles an hour. *Awful fast to be coming into an intersection.*" (Emphasis supplied.)

The italicized portion was deleted by the trial court in chambers as being a conclusion of the witness. Plaintiffs insist this was error because it was not objected to at the

time of taking the deposition and that the deletion or alteration was made without the consent of the deponent. The record discloses that an objection was made at the first reasonable opportunity to do so. There is no merit to either of these contentions. Obviously the gratuitous observation of deponent was inadmissible under any theory of the rules of evidence and hence the trial court properly deleted the objectionable portion before permitting the deposition to be read to the jury.

The trial court consistently and correctly took the view throughout the trial that the accident involved was not an "intersection collision". However, it is manifest from a reading of both the pleadings and the evidence that counsel for the parties changed somewhat their concept of this matter as the trial progressed. We perceive no error in the court's ruling permitting the defendants at the close of the trial to amend their answer to correspond to the facts adduced by striking therefrom the allegation that this accident occurred within the "intersection".

For the reason heretofore stated the judgment of the lower court is reversed with directions to grant a new trial.

Judgment reversed with directions.

LA PRADE, C. J., and WINDES, PHELPS, and STRUCKMEYER, JJ., concurring.