ECKERSTROM, Chief Judge:
¶ 1 Pierre and Lynn Vanoss, parents of the decedent, Jon Pierre Vanoss, and guardians of two of his minor children, along with Erin Healey, parent and guardian of a third child (collectively, "the Family"), appeal from the trial court's judgment following a jury trial and verdict in favor of BHP Copper Inc., alleging numerous claims of error. For the following reasons, we affirm the judgment of the trial court.
Factual and Procedural History
¶ 2 The following facts are not in dispute. In 2012, BHP began rebuilding and refurbishing certain facilities at the Pinto Valley Mine in Globe-facilities that had been inoperable for several years. BHP hired an independent contractor, Tetra Tech Construction Services, Inc. to refurbish the ore chute system in the secondary crusher building. BHP contractually required Tetra Tech to abide by a comprehensive safety program with specific procedures and training for all workers. BHP separately contracted with Stantec Consulting Services, Inc. to provide general construction and safety management for the project, and it hired Atwell Anderson, LLC as the project's general contractor. On September 22, 2012, Tetra Tech employee Jon Pierre Vanoss, who had been assigned to "fire watch" duty on the fourth floor of the secondary crusher building, did not return from lunch. Following a search, Vanoss was found on a conveyor belt at the bottom of the number eight chute, having died from an apparent fall.
¶ 3 In cases later consolidated, the Family brought this action alleging negligence and negligence per se and seeking compensatory and punitive damages.[1] Following trial, the jury returned a verdict in favor of BHP and the court entered judgment pursuant to Rule 54(b), Ariz. R. Civ. P. After the court denied the Family's motion for new trial, this appeal followed. We have jurisdiction. A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1), (5)(a).
*461 Non-Delegable Duty
¶ 4 The Family contends the trial court erroneously granted partial summary judgment in favor of BHP, alleging that, as a mine operator, BHP owed a non-delegable duty to Vanoss pursuant to certain mine-safety statutes and regulations. Accordingly, the Family urges that BHP is vicariously liable under the Restatement (Second) of Torts § 424 (1965), for Tetra Tech's failure to abide by required safeguards. We disagree with both contentions.
¶ 5 Whether one party owes another a duty of care is a question of law this court reviews de novo. Stanley v. McCarver , 208 Ariz. 219, ¶ 5, 92 P.3d 849, 851 (2004). A landowner who hires an independent contractor "owes no duty" to protect the employee of an independent contractor from that contractor's own negligence. E.L. Jones Constr. Co. v. Noland , 105 Ariz. 446, 455, 466 P.2d 740, 749 (1970). Indeed, "a landowner is not liable for the negligent conduct of an independent contractor unless the landowner has been independently negligent."[2] Lee v. M & H Enters., Inc. , 237 Ariz. 172, ¶ 12, 347 P.3d 1153, 1157 (App. 2015). Although Arizona courts have recognized landowners may owe non-delegable duties to third parties for the tortious conduct of independent contractors, see Rand v. Porsche Fin. Servs. , 216 Ariz. 424, ¶ 36, 167 P.3d 111, 121 (App. 2007), such duties do not extend to the employees of those contractors, Sullins v. Third & Catalina Constr. P'ship , 124 Ariz. 114, 117, 602 P.2d 495, 498 (App. 1979).
¶ 6 Weighty policy considerations support this rule; most notably, employees are covered by our state's workers' compensation scheme-the premiums of which a landowner either directly or indirectly pays by hiring an independent-contractor employer. Welker v. Kennecott Copper Co. , 1 Ariz. App. 395, 404, 403 P.2d 330 (1965), rejected in part on other grounds by Lewis v. N.J. Riebe Enters., Inc. , 170 Ariz. 384, 388-89, 825 P.2d 5, 9-10 (1992). Indeed, recognizing a non-delegable duty to such employees would serve only to increase the liability of the landowner merely for having hired an independent contractor. Id. As other courts have observed, this would "encourage the landowner to use [his] less experienced employees rather than an experienced contractor," thereby increasing the risk of harm to both employees and third parties. Dillard v. Strecker , 255 Kan. 704, 877 P.2d 371, 385 (1994).
¶ 7 Relying on § 424, Restatement (Second) of Torts,[3] the Family argues that certain mine-safety statutes and regulations impose a non-delegable duty on BHP. See A.R.S. § 27-304 ("The [mine] operator shall conduct his operation with due regard to health and safety."). However, we have previously determined § 424"does not apply in the area of the law governing the relationship of an owner of property to an employee of an independent contractor." Sullins , 124 Ariz. at 117, 602 P.2d at 498. In Sullins , we reasoned "[t]hat section ... could create a non-delegable duty owed by a property owner to an employee of an independent contractor," a principle "Arizona courts have expressly rejected." Id. , citing Welker , 1 Ariz. App. at 403, 403 P.2d 330. Further, although Arizona's mine-safety statutes and regulations impose numerous requirements for the protection of miners, nothing in them indicates *462 the legislature intended to create a right of action by imposing a non-delegable duty that supersedes the well-established rule in Arizona: a landowner is not liable to the employee of an independent contractor for the negligence of that contractor.[4] See A.R.S. §§ 27-301 to 27-318 ; Ariz. Admin. Code R11-1-101 to R11-1-152.
¶ 8 The Family also asserts "[t]he concept and application of non-delegable duties is now well established in Arizona." They observe that in Rand , 216 Ariz. 424, n.5, 167 P.3d 111, 121, this court both recognized a non-delegable duty and also adopted § 424. But Rand is unavailing here because the plaintiff there was a third party and not the employee of an independent contractor. 216 Ariz. 424, ¶¶ 4, 22, 167 P.3d 111, 114, 118. Likewise, the Family's reliance on Koepke v. Carter Hawley Hale Stores, Inc. is misplaced because the injured party there was a third-party customer of the landowner, not an employee of an independent contractor. 140 Ariz. 420, 423, 682 P.2d 425, 428 (App. 1984) ; see also Ft. Lowell-NSS Ltd. P'ship v. Kelly , 166 Ariz. 96, 98, 104, 800 P.2d 962, 964, 970 (1990) (landowner liable to employee of a third-party business operator for negligence of independent contractor).[5]
¶ 9 At oral argument, the Family argued the legislature abrogated the common-law independent-contractor rule for mining operations when it enacted our state's mine-safety statutes. See § 27-304 ; 1968 Ariz. Sess. Laws, ch. 111, § 5. But we can find no language therein that indicates any intent to do so. See § 27-304.
¶ 10 The Family specifically maintains that § 27-304(B) imposes a non-delegable statutory duty on BHP. Part of that subsection reads: "[The operator] shall be responsible for the safe performance of all work under him and for the safety of all employees." But the Family overlooks that the preceding sentence appears to contemplate delegation of specific safety responsibilities: "The operator, or some responsible person with authority appointed by him , shall be on duty at all times when employees are working." § 27-304(B) (emphasis added). In context, then, this section imposes a duty on BHP to operate a safe mine. But it does not expressly prohibit the operator from delegating that responsibility to an independent contractor. Nor does that language necessarily impose vicarious liability on the operator for the negligence of the independent contractor.
¶ 11 In the absence of such language, the Family emphasizes the relative dates of Welker (1965), our jurisprudence applying the independent-contractor rule in the mining context, and the statutes, which it claims modify that rule (1968). But none of the duties imposed by the later-enacted statutes conflict with the independent-contractor rule. See Carrow Co. v. Lusby , 167 Ariz. 18, 21, 804 P.2d 747, 750 (1990) ("[A]bsent a manifestation of legislative intent to repeal a common law rule, we will construe statutes as consistent with the common law.").[6]
*463 ¶ 12 Here, the parties agree both that Vanoss was an employee of Tetra Tech and that Tetra Tech was an independent contractor hired by BHP. Thus, we conclude summary judgment on the issue of vicarious liability was appropriate because Arizona law does not impose non-delegable duties on landowners to the employees of independent contractors. See Sullins , 124 Ariz. at 117, 602 P.2d at 498. Accordingly, the trial court correctly determined BHP was not subject to vicarious liability for the negligence of Tetra Tech.
Admissibility of Expert Testimony Concerning State and Federal Mining Statutes and Regulations
¶ 13 The Family asserts the trial court erred by preventing its mine-safety expert, Jack Spadaro, from testifying about certain mine-safety statutes and regulations. Rule 702, Ariz. R. Evid., provides that a properly qualified expert "may testify in the form of an opinion or otherwise if," among other requirements, "the testimony is based on sufficient facts or data" and "the expert has reliably applied the principles and methods to the facts of the case." We review a trial court's determinations on the admissibility of expert testimony for an abuse of discretion. Escamilla v. Cuello , 230 Ariz. 202, ¶ 20, 282 P.3d 403 , 407(2012).
¶ 14 Here, the trial court permitted Spadaro to testify provided "his testimony includes a differentiation of which defendant had what duty and what the defendant did to breach that duty," and on condition there be "timely disclosure of his opinions on duty and breach of duty." After reviewing the disclosure, the court noted that Spadaro's opinions depended on attributing vicarious liability to BHP for Tetra Tech's failure to comply with certain mine-safety statutes and regulations. Because the court had correctly granted summary judgment in favor of BHP on vicarious liability and non-delegable duty, see supra ¶¶ 4-12, it precluded Spadaro from testifying about the statutes and regulations. Our review of Spadaro's disclosure leads us to the same conclusion. His opinions regarding any failure to comply with mine-safety statutes and regulations depended on vicarious liability based on a non-delegable-duty theory of liability rather than BHP's independently tortious conduct.[7]
¶ 15 The Family asserts the statutes and regulations were relevant as a measure of BHP's duty to provide adequate safety supervision. Although the court permitted Spadaro to testify about BHP's safety-oversight obligation, it correctly precluded any opinion based on mine-safety statutes and regulations because the opinions Spadaro disclosed "depend[ed] on ... non-delegable duty and ... strict liability." Indeed, the statutes and regulations at issue do not prescribe how a mine owner must oversee the work of its independent contractors; rather they either impose general safety obligations or require the use of certain equipment and procedures. See A.R.S. §§ 27-301 to 27-318 ; Ariz. Admin. Code R11-1-101 to R1-11-152.
¶ 16 The Family frames the issue as whether statutes and regulations, generally, may operate as the standard of care in a negligence action. But the trial court did not preclude Spadaro's testimony on this ground. Rather, the court's implicit reasoning was that any opinion based on the statutes and regulations at issue was only minimally probative of whether BHP failed to supervise Tetra Tech and risked confusing or misleading the jury by introducing the theory that BHP may be vicariously liable for the failures of Tetra Tech. Therefore, we cannot say the court abused its discretion.[8]
*464 Admissibility of Deposition
¶ 17 The Family also complains the trial court improperly sustained BHP's untimely objections to "critical" portions of the deposition of Stantec employee Tracy Fischer, a former field-safety representative at the Pinto Valley Mine. Relying on Rule 32, Ariz. R. Civ. P., the Family insists BHP waived any objections not made during the deposition and, therefore, the court erred in excluding certain portions of it. We review admissibility determinations for an abuse of discretion. Gemstar Ltd. v. Ernst & Young , 185 Ariz. 493, 506, 917 P.2d 222, 235 (1996).
¶ 18 Rule 32(d)(3)(A), then in force, provided, "Objections to ... the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time." 106 Ariz. LXIII (1970). Rule 32, however, cannot transform evidence that is otherwise inadmissible into admissible evidence merely by operation of waiver. See Finn v. J.H. Rose Truck Lines , 1 Ariz. App. 27, 32, 398 P.2d 935 (1965) (counsel there cited "no authority holding that ... evidence, not ordinarily admissible ..., is rendered admissible by reason of the fact that there is no objection made at the time of the taking of a deposition"). Thus, a trial court may redact portions of a deposition that are "inadmissible under any theory of the rules of evidence." Rivera v. Hancock , 79 Ariz. 199, 207, 286 P.2d 199 (1955), overruled in part on other grounds by Brooker v. Canny , 103 Ariz. 529, 532, 446 P.2d 929, 932 (1968). Stated alternatively, Rule 32 waiver is not absolute. The trial court retains discretion over the admissibility of depositions and portions thereof.
¶ 19 BHP cites multiple cases from other jurisdictions for the proposition that waiver under Rule 32 applies only to "objections to the form of the questions" but not to substantive objections. See, e.g. , Wynder v. Lonergan , 153 Ind.App. 92, 286 N.E.2d 413 (1972) ; Schalkofski v. Lawrence , 37 Mich.App. 686, 195 N.W.2d 292 (1972). But the language of Rule 32(d)(3) belies such an interpretation. By its plain language, subsection (A) pertains to "the competency, relevancy, or materiality of testimony," grounds upon which a party would raise a substantive objection. By contrast, subsection (B) pertains to "the form of the questions or answers." We need not, however, resolve every contour of whether and when waiver under Rule 32 applies because, in each case, we conclude either that the testimony at issue was inadmissible under any theory, see Rivera , 79 Ariz. at 207, 286 P.2d 199, or that its exclusion was harmless because it would have been cumulative of other statements not redacted. See Borja v. Phx. Gen. Hosp., Inc. , 151 Ariz. 302, 306, 727 P.2d 355, 359 (App. 1986). Accordingly, we determine the trial court did not commit reversible error in excluding these portions of Fischer's deposition.
Statements Concerning Notice
¶ 20 The Family insists the trial court should not have excluded testimony about the notice BHP received from Fischer. The statements at issue are:
Q. Did you share your opinion about these crews with anyone on the job site or do you recall-
A. I shared my opinion about these crews with every single manager, person that would listen, and say, Why? Why do we still have these guys on-site? Why? I *465 don't agree with this. I want them gone. Repeatedly.
Q. Do you recall anyone specifically you told that to?
A. Good grief. Name it? I told it to all of their management, Bruce Willis. Jim McCarthy. Lucian Rose. Woody. I told it to Brian Keavney. To Ken. To C.R., Ken's brother, to Ahmed, to Rob Crohn, to David Weichardt. You name it. Everybody knew, without a doubt, how I felt about this crew. I don't mix words.
The court determined the statements would "confuse the issue and mislead the jury" because it was not clear Fischer made these complaints before Vanoss's death. Undoubtedly, this defect reasonably could have been cured had BHP noted its objection at the deposition. However, from a cold record we cannot determine how Fischer might have answered questions establishing whether she had warned BHP about Tetra Tech's dangerous practices before Vanoss's fall; and we do not see how the trial court could have done so either.
¶ 21 The Family insists "the timeline was clear when considered in context" of the deposition, but our independent review of the deposition and associated exhibits indicates Fischer does not clearly differentiate incidents and conversations that took place before Vanoss's fall from those that took place after. In particular, the Family argues the trial court's ruling on this point is inconsistent with its earlier ruling granting summary judgment in favor of Stantec, in which the court noted that prior to Vanoss's death, "Stantec ... had repeatedly communicated to BHP and others the propensity for Tetra Tech's employees to violate safety protocols." But the court did not specify that the evidence upon which it relied included Fischer's statements. Rather, the court placed greater emphasis on Stantec's limited role in the days leading up to the fall and, in particular, on the fact that on the day of the fall, "Stantec had no role in training Vanoss or others, providing safety supervision at the worksite," or ensuring compliance with specific safety statutes and regulations.
¶ 22 We agree with the trial court that any resolution as to when Fischer's warnings came in the overall timeline is too speculative. Although Finn provides that " Rule 32 appears to be designed to avoid an unfair l[ ]ying in wait by which another party is prejudiced," 1 Ariz. App. at 33, 398 P.2d 935, we also recognize that plaintiffs have a general obligation to produce admissible evidence. Cf. Orme Sch. v. Reeves , 166 Ariz. 301, 311, 802 P.2d 1000, 1010 (1990) (proponent of claim or defense must present evidence to survive summary judgment and directed verdict). With respect to these statements, the court did not err because no evidence established Fischer made the statements to BHP personnel before Vanoss's fall and, therefore, they were not admissible on any theory of relevance. See Rivera , 79 Ariz. at 207, 286 P.2d 199.
Party Admissions
¶ 23 The Family also contends the trial court improperly excluded certain party admissions. After asserting she complained to certain Stantec and Atwell Anderson employees, Fischer made the following statements, excluded by the court:
Q. And what was each of their responses to you?
A. They understood, but we were losing a lot of money on this job, and that we had to have workforce reduction.
The court rejected the argument that the statements attributed to Stantec and Atwell Anderson employees about losing money and reducing workforce were party admissions, also finding them vague and misleading. But even assuming these employees made their statements as "agent[s] or employee[s] on a matter within the scope of [their respective companies'] relationship" with BHP "while it existed," Ariz. R. Evid. 801(d)(2)(D), it is not at all apparent whether the purported admissions related to the actions and motivations of BHP rather than Stantec or Atwell Anderson. Although the defects in these statements possibly could have been cured by a timely objection, we will not speculate whether or how Fischer might have testified. Because no theory of admissibility clearly applies to these statements, see Rivera , 79 Ariz. at 207, 286 P.2d 199, we cannot say the trial court erred in excluding them.
*466 ¶ 24 The trial court also excluded the following statements, rejecting the Family's contention that they constituted party admissions:
Q. Some of the documents say that the Stantec safety techs are being let go, and that BHP people are going to take over that function. Is that something you read or heard ... at the Pinto Valley mine?
A. Yes, sir.
Q. Did you read it or hear it?
A. I heard it[.]
Q. Who[m] did you hear that from?
A. That was just the general word when we objected to losing our safety people.
Q. Did Carlton Pelts tell you that or Rob Crohn? [9 ]
A. I don't recall.
Q. Did you ever see any BHP people step into those safety responsibilities?
A. No, sir.
Concerning these statements Fischer heard about BHP taking over particular safety functions, she was unable to attribute them to BHP when asked directly. Because she was unable to lay the necessary foundation when given the opportunity, the ground of objection could not have been obviated or removed during the deposition. See Ariz. R. Civ. P. 32(d)(3)(A). Accordingly, BHP did not waive the objection with respect to these statements and the trial court did not err by precluding them.[10]
Stantec's Exclusion from the Investigation
¶ 25 The Family also contests the trial court's exclusion of Fischer's testimony that Stantec had been prevented from investigating Vanoss's death. But even assuming arguendo that the court erred, any such error was harmless because the court allowed the jury to hear other statements by Fischer that Stantec started an investigation into Vanoss's fall, "but BHP said that they were doing the investigation." See Borja , 151 Ariz. at 306, 727 P.2d at 359.
Nineteen Near-Miss Incidents & Related Opinion Evidence
¶ 26 The Family further complains that, although the trial court allowed some of Fischer's testimony regarding "near-misses" implicating job safety, it improperly excluded numerous references that nineteen such incidents had occurred. The court excluded such references for lack of foundation because Fischer had not clearly articulated whether each near-miss incident had occurred before Vanoss's death and the raw number risked misleading the jury.
¶ 27 Accordingly, the trial court excluded the following opinions based on these nineteen near-miss incidents:
Q. Okay. If Tetra Tech had safety technicians besides Lucian Rose working with him in the secondary crusher on Saturday, September 22, 2012, would that be sufficient safety supervision for that job site?
A. Are you asking my opinion?
Q. Yes, ma'am.
A. No.
Q. Why do you say that?
A. 19 near-misses says no.
Q. Okay. And so is that because based on your experience, Tetra Tech did things that were dangerous in the past?
A. Yes.
Q. And you felt it would have been-you felt that Tetra Tech needed someone to, I guess, supervise its own work for it?
A. I felt that Tetra Tech needed more supervision that had no other job but safety supervision.
Q. That didn't come through clearly here.
A. I said, no, did not feel comfortable with only one safety technician. I felt they needed more safety supervision that had no other job other than safety supervision.
¶ 28 With regard to the raw number of nineteen near-miss incidents, we cannot say the trial court erred by excluding such references. But even if this was error, it was *467 surely harmless because the court allowed the jury to hear that Fischer had reported twenty-two near misses to BHP for the duration of the whole project. See Borja , 151 Ariz. at 306, 727 P.2d at 359.
¶ 29 With regard to Fischer's opinions about whether BHP failed its safety-oversight duty, we find no error for the same reasons we cited in addressing the Family's claim of error for exclusion of Fischer's statements that she had told BHP about Tetra Tech's poor performance. See supra ¶¶ 20-22. Specifically, it is not clear that the facts and data upon which Fischer based her opinion occurred before Vanoss's death. See Ariz. R. Evid. 702(b) (expert testimony must be "based on sufficient facts or data"). Although this defect possibly could have been cured had BHP objected during the deposition, the statements as presented to the court appear inadmissible under any theory, see Rivera , 79 Ariz. at 207, 286 P.2d 199, and we will not speculate as to whether or how these defects might have been cured. Accordingly, we cannot say the trial court erred by excluding these statements.
Waiver of Privilege/Discovery Sanctions
¶ 30 Finally, the Family contends BHP waived attorney-client and work-product privileges for its internal-investigation documents when it "fail[ed] or refus[ed] to timely comply with [the privilege-log requirements of] Rule 26.1(f)(1)," costing the Family "significant amounts of time and effort." We will not disturb a trial court's decision regarding sanctions for a disclosure violation absent an abuse of discretion. Sec. Title Agency, Inc. v. Pope , 219 Ariz. 480, ¶ 111, 200 P.3d 977, 1002 (App. 2008).
¶ 31 Rule 37(c), Ariz. R. Civ. P., authorizes the trial court to impose sanctions for disclosure failures, whether for untimeliness, inaccuracy, or incompleteness. Available sanctions include the reasonable expenses of the opposing party (including attorney fees), jury instructions, and "other appropriate sanctions," including rendering a default judgment. Ariz. R. Civ. P. 37(c)(3). The rule does not enumerate waiver as an available sanction and certainly does not mandate waiver as a matter of law. See id.
¶ 32 Here, the trial court found BHP's first privilege log, produced over a year after its initial disclosure statement, was incomplete because "it failed to fairly describe the nature of the documents, communications, or things not produced or disclosed sufficient to enable Plaintiffs to contest the claim of privilege." The court further found this caused the Family "to expend significant amounts of time and effort." Following a thorough review, the court awarded attorney fees incurred as a result of the untimely and incomplete log. Because the trial court "is in the best position to evaluate the quality and motivation of counsel in litigation," we cannot say it abused its discretion by awarding attorney fees as a sanction rather than ordering privileges waived. Hormel v. Maricopa County , 224 Ariz. 454, ¶ 30, 232 P.3d 768, 775 (App. 2010).
¶ 33 Advancing numerous arguments, the Family urges this court to determine that waiver was the only appropriate sanction for BHP's discovery failures. The Family implores us to adopt the four-factor test for sanctions articulated in Burlington Northern & Santa Fe Railway Co. v. United States District Court for District of Montana , 408 F.3d 1142, 1149-50 (9th Cir. 2005).[11] We decline to do so because, even if we did, the trial court would have acted well within its discretion to sanction BHP as it did without also finding BHP had waived any privilege in the reports. See Hormel , 224 Ariz. 454, ¶ 30, 232 P.3d 768, 775.
¶ 34 Alternatively, the Family insists the trial court erred by declining to conduct an in-camera review of all documents after determining BHP had not waived any privilege.[12] But whether to conduct such a review *468 is within the discretion of the trial court. See Phelps Dodge Corp. v. Superior Court , 7 Ariz. App. 277, 281, 438 P.2d 424 (1968), abrogated on other grounds by State v. Ott , 167 Ariz. 420, 808 P.2d 305 (App. 1990). Here, the court ordered an in-camera review of certain " 'third party' witness statements and summaries of witness interviews" but declined to review each item on the privilege log because the Family "failed to meet the requirements of Rule 26(b)(3) [for discovery of work product] ... [and] the Court f[ound] it unnecessary and inappropriate to examine [those] materials." Based on the court's findings, we cannot say it abused its discretion.[13] See Phelps Dodge , 7 Ariz. App. at 281, 438 P.2d 424.
Disposition
¶ 35 For all the above reasons we affirm the judgment of the trial court.

The Family also named Stantec Consulting Services, Inc., Atwell Anderson, LLC, and Travelers Casualty Insurance Company of America as defendants. The trial court dismissed the complaint against Travelers because it did not contain any allegations of wrongdoing against or seek any affirmative relief from Travelers. The court granted summary judgment in favor of Stantec, finding the Family failed to produce "sufficient evidence to establish proximate causation" or "to show that Stantec ... had any knowledge of the conditions ... or ... was in any position to remedy any alleged safety violation." The Family does not appeal either of these orders. At the close of the Family's case, the court dismissed Atwell Anderson after reaching a full and complete settlement.

The Family attempts to distinguish the instant case from those determining "mere landowners" or "passive landowner[s]" do not owe non-delegable duties, asserting BHP was an "active mine operator," subject to statutory and regulatory requirements. See, e.g. , Sullins v. Third & Catalina Constr. P'ship , 124 Ariz. 114, 116, 602 P.2d 495, 497 (App. 1979) (defendant owned building at time of accident); Cordova v. Parrett , 146 Ariz. 79, 81, 703 P.2d 1228, 1230 (App. 1985) (defendants hired contractor to move and install mobile home). However, this distinction does not lend itself to vicarious liability. Instead, by emphasizing BHP's active role, this argument grounds itself in direct liability or retained control. See Ft. Lowell-NSS Ltd. P'ship v. Kelly , 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990) ("nondelegable duty ... is somewhat of a misnomer because it refers to duties for which the employer must retain responsibility, despite proper delegation to another").

Section 424 states, "One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions."

Similarly, the Family attempts to distinguish this court's rejection of non-delegable duties in Sullins because the plaintiff in that case had relied on the Occupational Safety and Health Act which, unlike our mining statutes and regulations, expressly states it "will not support a cause of action for personal injuries by an employee of a subcontractor against the employer of the subcontractor." 124 Ariz. at 117-18, 602 P.2d at 498-99, citing 29 U.S.C. § 653(b)(4). But this provision of the Act was by no means dispositive; in the context of a landowner and the employee of an independent contractor, the court clearly stated, "Arizona does not recognize non-delegable duties." Sullins , 124 Ariz. at 118, 602 P.2d at 499.

The Family interprets Ft. Lowell to stand for the proposition that under the Restatement (Second) of Torts § 422(b), Arizona courts have recognized vicarious liability for the negligence of "run-of-the-mill general contractors ... to employees of independent contractors." Accordingly, the Family insists that rejecting § 424 would be inconsistent, allowing BHP to "escape liability for [its] regulatory breach [ ]." However, in Ft. Lowell the injured party was not an employee of the negligent contractor, but an employee of a business operator-a distinct and unrelated third party. 166 Ariz. at 98, 800 P.2d at 964. The Family does not argue BHP is liable to Vanoss as a third party injured by the negligence of a different independent contractor. Ft. Lowell , therefore, is inapposite.

Accordingly, while the mine-safety statutes arguably create non-delegable duties running to some third parties, they do not do so for the employees of independent contractors.

Similarly, the Family's reliance on the "overlapping compliance responsibility" between BHP and Tetra Tech as a ground requiring admission of mine-safety statutes and regulations is misplaced. Spadaro's disclosure indicates a regulatory citation may be appropriate based on "overlapping" responsibility arising from a mine operator's own acts, omissions, or retained control. But as the trial court stated, "[it] didn't hear any testimony or see any exhibit" establishing such a theory.

Accordingly, we also reject the Family's contention that the trial court erred by refusing to instruct the jury on both the mine-safety statutes and regulations, themselves, and negligence per se. None of these instructions distinguished between those safety duties retained by BHP and those it had delegated to its independent contractors. Thus, in the absence of any accompanying instruction distinguishing direct and vicarious liability, such instructions risked confusing the jurors as to the appropriate grounds for finding BHP liable. See State v. Musgrove , 223 Ariz. 164, ¶ 6, 221 P.3d 43, 46 (App. 2009) (court "should reject a 'proffered jury instruction that ... has the potential to mislead or confuse the jury' "), quoting State v. Rivera , 177 Ariz. 476, 479, 868 P.2d 1059, 1062 (App. 1994). The Family proposed no such clarifying instruction. Also, because the mine-safety statutes and regulations were properly kept from the jury, there was no statutory or regulatory basis upon which the jury could have returned a verdict in favor of the Family based on negligence per se. See Hutto v. Francisco , 210 Ariz. 88, ¶ 12, 107 P.3d 934, 937 (App. 2005) ("Negligence per se applies when there has been a violation of a specific requirement of a law."), quoting Griffith v. Valley of the Sun Recovery and Adjustment Bureau, Inc. , 126 Ariz. 227, 229, 613 P.2d 1283, 1285 (App. 1980). We therefore cannot say the court erred by denying the requested instructions.

Employees of BHP.

Similarly, the trial court properly excluded Fischer's equivocal answer to the question of whether "anyone took ... responsibilit [y] in the secondary crusher."

That case proposed that, on a case-by-case basis, a court should consider: (1) the degree to which invocation of privilege frustrates the ability to determine whether withheld documents are actually privileged; (2) the timeliness of the invocation; (3) the magnitude of document production; and (4) other considerations that make responding unusually easy or difficult. Burlington , 408 F.3d at 1149.

The Family also argues that the documents were not protected by the attorney-client privilege insofar as BHP officers merely distributed the documents to their attorneys. But as BHP observes, the trial court determined the documents constituted attorney work product prepared in anticipation of litigation.

The Family also claims the trial court erred by finding the "dual purpose doctrine" inapplicable. However, it appears the Family misunderstands that doctrine as one that renders documents unprivileged rather than privileged. See United States v. Adlman , 134 F.3d 1194, 1201-03 (2d Cir. 1998) (documents prepared in anticipation of litigation "eligible for work-product privilege" even though prepared to serve other purposes as well). Here, the court correctly determined the documents were prepared "for the dual purpose of defending against anticipated litigation and participating in a regulatory investigation." Moreover, the Family cites the Federal Mine Safety and Health Review Commission adjudication arising from this incident, in which that commission applied the doctrine and determined the documents were not privileged. See BHP Copper, Inc., Mine Safety and Health Admin., West No. 2013-636-M (Dep't of Labor Apr. 25, 2016). But the Family does not argue, let alone demonstrate, the trial court, or this court, is bound by that commission's privilege determination.